CRANE COMPANY, Plaintiff-
Appellant,

v.

AEROQUIP CORPORATION,
Defendant-Appellee.

Nos. 73–2109 and 73–2110.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1974.

Decided Oct. 29, 1974.

Rehearing Denied Nov. 15, 1974.

Don K. Harness, Birmingham, Mich., William J. Stellman, Chicago, Ill., for Aeroquip.

Henry L. Brinks, Chicago, Ill., for Crane.

Before SWYGERT, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

In these consolidated actions, plaintiff charged defendant with breach of a 1968 patent license agreement and with patent infringement. The basic questions are whether plaintiff's Bredtschneider patent No. 2,933,333 is valid and, if it is, whether defendant's accused coupling infringes the patent. Both parties appeal from the judgment below.

In its memorandum opinion, the district court upheld the Bredtschneider patent as to the nine claims in issue but ruled that defendant's modified device did not infringe them. Nevertheless, since defendant marked its modified couplings with the Bredtschneider patent number until some time after November 1, 1972, it was adjudged liable for unpaid royalties on those couplings until the expiration of the license agreement on April 19, 1977. 364 F.Supp. 547 (N.D.Ill.1973). In addition, the trial court made rulings, which are challenged by either party in this Court, on the issues of marking estoppel, termination of the licensing agreement, costs and attorneys' fees.

The patent-in-suit covers a pipe coupling used in installing split air-conditioning systems. Such a system usually employs a condenser unit outside the building and a cooling coil or evaporator unit inside the building, with the two units connected at the time of installation by connecting piping. Split air-conditioning systems are commonly used for residential, central air conditioning. Since both air and moisture are harmful contaminants in closed fluid air-conditioners, a means of connecting and charging the split system without contamination, without loss of refrigerant and without the expense of hiring skilled technicians was sought. The patented invention satisfied this need because it permits the condenser unit, the cooling coil unit and the connecting tubing to be precharged with refrigerant at the factory and connected without contamination or loss of refrigerant by unskilled installers at the job site.

Both the male and female halves of the patented coupling contain thin metallic diaphragms that restrain the fluid while the halves are unconnected. As

the two halves are joined by the rotation of a union nut, both diaphragms are pierced by a cutter located within the male part, thus permitting the precharged fluid to flow freely through the coupling. Ordinarily four coupling halves, two male and two female, are used. One is located on the condenser, one on the cooling coil or evaporator and one at each end of the precharged connecting pipe or hose. By simply tightening the union nut on the two couplings the unskilled installer can make the closed fluid system operational in just a few minutes. The patent on this coupling issued on April 19, 1960.

Plaintiff filed an earlier lawsuit against defendant in 1967 charging that this patent was infringed by defendant's original, stainless steel gasket coupling, denominated the 5700 Series. A consent decree was entered after the parties negotiated an exclusive license agreement under which defendant agreed to pay plaintiff royalties under the Bredtschneider patent on sales of its original couplings. Defendant has paid or tendered all royalties due plaintiff under the license agreement on defendant's sales of the original 5700 Series coupling.

In 1969, however, defendant commenced the manufacture of a modified 5700 Series coupling and has not paid any royalties to plaintiff on sales of it, thus precipitating the present litigation. The modified coupling eliminates a stainless steel gasket in the male part and provides for a brass-to-brass final static seal, rather than the stainless steel to brass seal of the original version. The male half remains the same.

As exclusive licensee under the patent, defendant has become the only company making and selling a coupling for fully precharged residential air-conditioning systems. By 1971–1972, defendant's yearly sales of couplings exceeded $5,000,000 per year. While the original coupling outsold the modified one by a ratio of fifteen or more to one in the first few quarters after the latter's 1969 introduction, the ratio had reversed by March 1972.

*Validity of Bredtschneider Patent*

The nine claims presently in issue can be divided into two groups. Claims 1–4 emphasize the dynamic and static sealing means of the coupling while the remaining claims (6, 9, 11, 14 and 15) emphasize the relationship among the diaphragms in the male and female parts and the piercing means which opens the passage by penetrating the diaphragms as the two parts are connected. Claim 1 is illustrative of the first four claims and reads as follows:

"A coupling for a closed fluid system, comprising

(1) a pair of coupling parts movable relatively toward each other each having a passage therethrough,

(2) means for moving said parts toward each other in passage-aligning relation,

(3) a relatively thin metallic diaphragm in each part closing the passage therein,

(4) passaged cutting means disposed interiorly of the parts disrupting said diaphragms upon movement of the parts toward each other to open the passages to each other and defining a portion of the passage through the coupled parts,

(5) means sealing against leakage during movement of the parts to final position after diaphragm disruption, and

(6) gasket means sealing between the parts in final position thereof" (numbering added).

After examining the file wrapper history of these claims, the district judge, relying on the expertise of the Patent Office and the presumption of validity, held that Claims 1–4 were not anticipated by prior art invention within the meaning of 35 U.S.C. § 102(b). 364 F. Supp. at 552–554.

Next, the district court rejected the defense of obviousness under 35 U.S.C. § 103 as to all nine of the patent claims in suit. 364 F.Supp. at 554–556. For the reasons given below, we concur in those

rulings upholding the nine claims at issue. In this connection, it is interesting to note that at oral argument in this Court, defendant's counsel conceded that the last five claims (6, 9, 11, 14 and 15) were valid.

*Infringement of Claims 1–4*

■■ In considering the file wrapper, the district court determined that "the combination dynamic and static seal *by a gasket means* was intended to be a material inventive distinction over the prior art" (emphasis added). 364 F.Supp. at 558. The court concluded that the gasket means was clearly a material and essential element of plaintiff's amended claims. Defendant's modified device omits the gasket means of achieving the final, static seal; thus it avoids literal infringement and causes plaintiff to rely on the doctrine of equivalents. However, the district court held that file wrapper estoppel prevented plaintiff from expanding its claims to cover defendant's gasketless device.

Since a gasket sealing means was crucial to plaintiff in distinguishing the prior art and securing its patent, the doctrine of equivalents was clearly superseded here by the doctrine of file wrapper estoppel. Therefore, we agree that the modified coupling does not infringe Claims 1–4. See 364 F.Supp. at 556–558.

*Infringement of Claims 6, 9, 11, 14 and 15*

At the close of its case, plaintiff withdrew its Claim 5 infringement issue in order to "shorten the trial" and with the reservation that its admission that it failed to meet its burden of proof as to Claim 5 did not apply to the remaining claims. Thus plaintiff did not withdraw its complaint that Claims 6, 9, 11, 14 and 15 were infringed by the accused coupling.[1]

Claim 5 reads as follows:

"A coupling for a closed fluid-circulating system, comprising—

(1) a pair of passaged coupling parts relatively movable toward each other,

(2) means for moving the parts relatively toward each other in passage-aligning relation,

(3) a thin metallic diaphragm in each part closing the passage therein,

(4) said diaphragms engaging upon said movement of the parts and the diaphragm in one of the parts having separable securement therein for detachment therefrom and movement therein *by the other diaphragm,* and

(5) a tubular member secured in said one part inwardly of the diaphragm extending toward the other part having its end adjacent said other part extending obliquely to the longitudinal axis of the member and forming a cutting portion of the member penetrating said engaged diaphragms upon said movement thereof to place said passages in communication" (numbering and emphasis added).

Claim 9 is illustrative of the remaining claims, all of which use broader language with regard to what element forces the male diaphragm rearward than that used in Claim 5. Claim 9 reads as follows:

"A coupling for a closed fluid-circulating system, comprising

(1) a pair of passaged coupling parts relatively movable toward each other,

(2) means for moving said parts relatively toward each other in passage-aligning relation,

(3) means in each part closing the passage therein,

(4) said closing means engaging against each other upon said movement of the parts and the closing means of one of the parts having sep-

1. It should be noted that the area of emphasis in this set of claims was not affected by defendant's modification of its original coupling.

arable securement therein for detachment and movement *by the other closing means*, and

(5) piercing means secured in said one part adjacent and inwardly of the closing means thereof engaging and penetrating said engaged closing means upon said movement thereof to open the passages to each other,

(6) said piercing means including means bearing against and displacing the penetrated closing means toward the wall of the passages to prevent flow obstruction thereby" (numbering and emphasis added).

Plaintiff apparently abandoned its contention that Claim 5 was infringed because its expert could not establish that the female diaphragm in defendant's device was the sole object that forced the male diaphragm over the cutter (see element (4) of Claim 5). Plaintiff's expert acknowledged that the nose of the female member itself might also play a role in pushing the male diaphragm back. Despite their broader language (see, *e. g.*, element (4) of Claim 9) and plaintiff's express reservation of its remaining claims upon withdrawal of Claim 5, the district court held Claims 6, 9, 11, 14 and 15 had not been infringed, reasoning as follows:

"Claim 5 was withdrawn for failure to prove that the accused coupling infringed the requirements of the claim, namely that the female diaphragm move the male diaphragm over the cutter. The other claims remained in suit. The only relevant distinction between Claim 5 and the other claims in issue is that Claims 6 and 9 employ the term 'closing means', Claims 11 and 14 employ the term 'disruptable members' and Claim 15 uses the term 'penetrable means'. Plaintiff's own claim charts show that there is no distinction between any of the terms used for purposes of distinguishing the diaphragm or hermetic seal from

the rest of the coupling part. Accordingly, for the same reasons Claim 5 was withdrawn, proof of infringement of Claims 6, 9, 11, 14 and 15 failed." [2] 364 F.Supp. at 558.

To avoid this holding, plaintiff argues that its patent specification describes, as an alternative to the one-piece closing means, a two-piece closing means like that employed in defendant's female coupling part. In this respect, the plaintiff relies on the following language from its specification:

"It will be clear that if desired both diaphragms 23 and 25 may be substantially identical, the part 12 [the female body part] in such case being formed with a sleeve portion for telescoping within the body portion 13 of part 11 [the male body part] and carrying the diaphragm 25."

■ Plaintiff's admission that it could not prove infringement of Claim 5 does not preclude plaintiff with respect to Claims 6, 9, 11, 14 and 15, because Claim 5 was drawn to a one-piece female closing means, described therein as "a thin metallic diaphragm," and could not, therefore, cover the alternative two-piece sleeve and diaphragm closing means. On the other hand, the remaining five claims contain sufficiently broad language to cover the alternative two-piece female closing means described in the patent specification and used by defendant. For example, Claim 9 employs the term "means in each part closing the passages therein," which reads literally on both of the disclosed one-piece and two-piece devices.

35 U.S.C. § 112 provides in pertinent part:

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claims shall be construed to cover the corresponding

---

2. As to "separable securement" as used in Claims 6, 9, 11, 14 and 15, the court held that infringement was not proved on any of the manufactured sizes of the accused coupling except size-12. See discussion, *infra* at pp. 1091–1092.

structure, material, or acts described in the specification and equivalents thereof."

Under this statute, the district court was required to construe these five claims with reference to the patent specification. As seen, defendant's two-piece closing means in its female coupling part is an alternative described in the specification of the suit patent, and it was improper to construe these five broad claims as if they contained the limitation expressed in the narrower Claim 5. Smith v. Snow, 294 U.S. 1, 16, 55 S.Ct. 279, 79 L.Ed. 721. Defendant's device, therefore, is literally covered by Claims 6, 9, 11, 14 and 15 as they apply to the alternative design set forth in the patent specification.

The inked-in lines on all of plaintiff's claim chart photographs indicate the same one-piece structure as the closing means, whatever the precise language of each claim. The district court relied on this similarity between Claim 5 and the remaining claims to justify treating the latter as equivalent to the former (364 F.Supp. at 558). We think that the language of the claims, which we have already held specifically cover defendant's device, should control the indicators on the charts, especially since the charts were drawn simply to aid the trial court's understanding. Therefore, the district court's reliance on the similarity of the claim charts was misplaced. In addition, we note that plaintiff's expert, Mr. Magos, explained that he colored the female closing means of defendant's device green in several of the exhibits before the court, and the green coloring extends to both the sleeve portion and the diaphragm. It is clear from this second set of exhibits and the expert testimony that plaintiff contended at trial, as here, that both pieces of defendant's female part constituted the closing means.

■■ Furthermore, aside from the literal infringement, the district court here, as in Laser Alignment, Inc. v. Woodruff & Sons, 491 F.2d 866, 872 (7th Cir. 1974), should have applied the doctrine of equivalents. Its application is proper here because there is neither file wrapper estoppel nor restrictive prior art that bears upon the area of emphasis in these five claims. Our study of the record shows that defendant's coupling and the suit patent do the same work in substantially the same way, with substantially the same result, so that infringement was made out. Graver Tank & Manufacturing Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 608–609, 70 S.Ct. 854, 94 L.Ed. 1097. The doctrine of equivalents forbids the use of two pieces that perform the same function as one in order to avoid infringement. See Zysset v. Popeil Bros., Inc., 276 F.2d 354, 357–358 (7th Cir. 1960), certiorari denied, 364 U.S. 826, 81 S.Ct. 62, 5 L.Ed.2d 54.

Defendant relies on dye tests which it performed on its accused coupling to show that its female diaphragm does not force the male diaphragm over the cutter. However, those tests were not taken during movement of the parts, whereas three of plaintiff's exhibits reveal that the male diaphragm of defendant's coupling was engaged and moved by *both* parts of the two-piece female closing means, again showing infringement both literally and under the doctrine of equivalents.

To avoid infringement, defendant also relies on the phrase in these five claims that the male closing means have "separable securement therein for detachment." This phrase is explained in the patent specification as follows:

"For convenience of securement, the diaphragm 23 has an integral flange lying against the passage wall and is secured thereto by a ring of solder 24 or the like which may be fractured upon application of sufficient pressure so that the securement of the diaphragm is separable.

* * * * * *

"As the parts move relatively toward each other * * * continued relative movement of the parts causes the

solder 24 to give way so that the diaphragm 23 may move within the part 11 with the diaphragm 25."

It is thus apparent that the "securement" separates when the solder connection fractures and gives way, so that the male and female closing means can move together within the male part during coupling. The district court held with respect to separable securement that infringement had not been proved, except as to defendant's size-12 coupling. 364 F.Supp. at 558.

In support of that holding, defendant argues that its male diaphragm does not completely separate. Defendant's male closing means is mounted in the same manner as described in the suit patent specification. Its chief product engineer admitted that in all of its couplings the solder connection fractures and the male closing means peels away from the male coupling part upon coupling. In the light of the suit patent specification, it is immaterial whether defendant's male closing means moves completely away or partially away from its solder connection. Therefore, defendant's device literally infringes plaintiff's five claims.

Furthermore, the plaintiff's claimed movement of the male closing means occurs in any event, and under the doctrine of equivalents and *Graver, supra,* there is infringement since the elements in defendant's device perform the same work, in substantially the same way, with substantially the same result.

Plaintiff's witness Magos agreed that one illustration in plaintiff's patent drawings showed complete separation, but he immediately thereafter testified that "separable securement" does not "necessarily mean that you have a complete separation." He gave such examples as a partially detached retina and a half-way peeled banana. Since the claim language did not call for a completely separable securement, the district court erroneously held that infringement was not proved.

*Termination of the License Agreement*

■■ The court below held that defendant's failure to pay royalties on the accused couplings was not a sufficient basis for allowing plaintiff to terminate the license agreement, as it wished, particularly since there was "an honest dispute as to the coverage of the patent license." 364 F.Supp. at 561. This decision was correct and was more fully explained in an earlier phase of the litigation. 356 F.Supp. 733, 737–740.

Defendant's refusal to pay royalties on these couplings was given on the ground that they are outside the scope of the licensed patent. Even plaintiff concedes that defendant's failure to make back royalty payments was not by itself cause for termination. The court below properly applied the public policy concerns of Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610, in its earlier opinion, noting:

"Crane has asked this court to adjudicate the license as terminated essentially because the licensee has raised the validity defense. Yet, just as the imposition of the doctrine of licensee estoppel would have a chilling effect on meritorious challenges to patents, as well as ultimate competition with the licensee, so would the threat of termination of the license have a similar effect." 356 F.Supp. at 738–739.

As we held in Beckman Instruments, Inc. v. Technical Development Corp., 433 F.2d 55, 58–59 (7th Cir. 1970), certiorari denied, 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326, the fact that defendant marked its products with plaintiff's patent number is insufficient to make the *Lear* case and its policy rationale inapplicable. Defendant was within its rights to test validity after entering into the consent judgment of validity. Business Forms Finishing Service, Inc. v. Carson, 452 F.2d 70, 75 (7th Cir. 1971); Kraly v. National Distillers and Chemical Corp., 502 F.2d 1366 (7th Cir. 1974). Accordingly, we approve the district court's refusal to declare the license

agreement terminated; consequently, defendant's obligations to pay royalties on these couplings are governed by the terms of the license agreement.

## Marking Estoppel

The district court found that defendant had "a specific intent to mark the accused devices and represent them as protected by a patent." 364 F.Supp. at 560. Despite its holding of non-infringement by defendant, the court held that defendant's marking of its modified couplings with plaintiff's patent number estopped it from denying that it was liable for royalties on the modified couplings. Because of our decision that the modified couplings do infringe Claims 6, 9, 11, 14 and 15 of the suit patent, it is unnecessary for us to decide the question whether the court was right in holding defendant liable by reason of marking. We express no opinion on that phase of the decision below.

## Plaintiff's Attorneys' Fees and Costs

■ Relying on 35 U.S.C. § 285 permitting a district court to award reasonable attorneys' fees to the prevailing party in exceptional patent cases, plaintiff insists that defendant's conduct was sufficiently vexatious to justify awarding plaintiff's attorneys' fees.[3] While we cannot condone defendant's marking conduct, the statute does not require that attorneys' fees be granted to the prevailing party. Nor do plaintiff's authorities compel the award of attorneys' fees where, as here, no showing has been made that the district court abused its discretion. By the same token, the district court's discretion in awarding costs to plaintiff will not be disturbed where, as here, defendant has likewise not shown an abuse of discretion. Sarkes Tarzian, Inc. v. Philco Corporation, 351 F.2d 557, 561 (7th Cir. 1965). Therefore, the district court's decisions to award costs to plaintiff and to deny it attorneys' fees are affirmed.

## Plaintiff's Motion to Strike

■ A fortnight before the oral argument, plaintiff filed a motion to strike a paragraph of defendant's reply brief requesting us to vacate paragraph 6 of the judgment below insofar as it may adjudge that defendant's original 5700 Series couplings infringed Claims 6, 9, 11, 14 and 15 of the patent in suit. Paragraph 6 of the judgment below reads:

> "Defendant's STAINLESS STEEL SEAL COUPLINGS [the original 5700 Series] are covered by the claims of said Suit Patent, and said STAINLESS STEEL SEAL COUPLINGS infringe said Suit Patent."

Because this matter was raised for the first time in plaintiff's own reply brief and since the notice of appeal by defendant did embrace this matter, it was appropriate for defendant's later reply brief to urge that paragraph 6 of the judgment was incorrect.

■ Since the original model is identical to the modified in all respects relevant to the area of emphasis in Claims 6, 9, 11, 14 and 15 and since we held that the modified version infringes those claims, it seems obvious that an expansive reading of paragraph 6 of the judgment below would be legally correct. Nevertheless, no issue was presented to the district court by the pleadings or tried by it as to whether the original couplings infringed Claims 6, 9, 11, 14 and 15. Furthermore, to read paragraph 6 to embrace the latter claims would be inconsistent with the holdings of the district court. It appears, therefore, that the infringement spoken of in paragraph 6 should be limited to Claims 1–4, which were fully litigated before the trial court. Defendant admits that its original model infringed Claims 1–4 if they were held valid, and it is only this admission that the district court should have encompassed in its final order. The original couplings have a

---

3. Except in the conclusion of its reply brief, plaintiff no longer claims entitlement to special damages under 35 U.S.C. § 284. In any event, plaintiff has failed to show that the district court abused its discretion in denying plaintiff special damages.

stainless steel gasket to effect the final static seal and that sealing means was at the center of much of the case below. Only Claims 1–4 have any relation to gasket sealing means; consequently, plaintiff's motion to strike is denied, and on remand paragraph 6 of the judgment below should be restricted to apply only to claims 1–4 of the suit patent.

The judgment below is affirmed insofar as it holds Claims 1–4 to be valid and enforceable but not infringed by the defendant's modified couplings, insofar as it refuses to hold the license agreement terminated, and insofar as it awards costs to plaintiff and denies plaintiff's request for attorneys' fees and special damages.

The judgment below is reversed insofar as it holds Claims 6, 9, 11, 14 and 15 not infringed by the defendant's modified couplings and is vacated and modified in order to confine paragraph 6 of the judgment to Claims 1–4.

The cause is remanded to the same district judge for further proceedings in order to assess the royalties due and for other appropriate relief in accordance with this opinion. Costs on appeal will be taxed against defendant.