**Raymond Keith FOSTER, Keith Mfg. Co., and Keith Sales, Co., Plaintiffs–Appellees,**

v.

**HALLCO MANUFACTURING CO., INC., and Olof A. Hallstrom, Defendants–Appellants.**

No. 90–1299.

United States Court of Appeals, Federal Circuit.

Sept. 27, 1991.

Delbart J. Barnard, Barnard, Pauly & Kaser, P.S., Seattle, Wash., argued, for plaintiffs-appellees.

Peter E. Heuser, Kolisch, Hartwell & Dickinson, Portland, Or., argued, for defendants-appellants. With him on the brief, was David A. Fanning.

Before NIES, Chief Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.

NIES, Chief Judge.

The United States District Court for the District of Oregon certified for immediate appeal its denial of a motion for partial summary judgment. *Foster v. Hallco Mfg. Co.*, 14 USPQ2d 1746, 1989 WL 138740 (1989) (Frye, J.). Foster filed a declaratory judgment action seeking, *inter alia*, a declaration of invalidity and unenforceability of Hallco's patents, U.S. Patent Nos. 4,143,-760 ('760) and 4,184,587 ('587). Hallco moved for partial summary judgment on

the ground that Foster was precluded from raising those issues by reason of *res judicata* arising from a consent decree entered in prior litigation between the parties which states the patents are valid and enforceable. The district court held that the provision in the consent decree with respect to the validity and enforceability of the patents contravened the federal patent policies recognized by the Supreme Court in *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), and, thus, the consent decree did not preclude Foster from raising those issues. We reverse the district court's ruling based on *Lear* and hold that a consent decree respecting validity *may* bar future litigation of that issue. However, there are genuine issues of fact and law respecting the application of principles of *res judicata* in this case. Accordingly, we *remand* to the district court for reconsideration of those issues.

# I

## BACKGROUND

Raymond Keith Foster, Keith Manufacturing Company, and Keith Sales Company (Collectively Foster) are competitors with Hallco Manufacturing Company, owned by Olof A. Hallstrom, in the manufacture and installation of reciprocating floor conveyor systems used primarily in truck beds. Hallco is now the owner of the two patents for floor conveyors involved in this appeal, namely, the '760 and '587 patents previously owned by Mr. Hallstrom. These patents came into dispute between the same parties in interest in an earlier infringement suit and declaratory judgment action before Judge Frye, *Hallstrom v. Foster*, No. CV–79–1230. [*Foster I*][1] The parties entered a settlement agreement of that litigation in early 1982, under which Foster obtained a nonexclusive royalty bearing license under the '760 and '587 patents (and foreign counterparts) and a royalty free license under three other patents. The parties terminated the litigation by the entry of a consent judgment in which Foster acknowledged the validity and infringement of the '760 and '587 patents but which provided for no monetary or injunctive relief. Other claims and counterclaims were dismissed. More specifically, the consent judgment provided:

The parties hereto ... have resolved their differences in accordance with a license agreement executed by them and have consented to the entry of the following judgment:

IT IS HEREBY ORDERED:

1. This court has jurisdiction over the parties and the subject matter of this action.

2. United States Letters Patent Nos. 4,143,760 and 4,184,587 are owned by plaintiff and are valid and enforceable in all respects.

3. Defendant R. Keith Foster, dba Keith Mfg. Co. has infringed claims of United States Letters Patent Nos. 4,143,-760 and 4,185,587.

4. Judgment on the basis of infringement of United States Letters Patent Nos. 4,143,760 and 4,185,587 is entered in favor of plaintiff.

5. The above-entitled civil action, including all claims of plaintiff against defendant and all counterclaims of defendant against plaintiff, is hereby dismissed.

6. There shall be no accounting or award of damages and each party is to bear his own costs and attorneys' fees.

7. This consent judgment is binding upon and constitutes *res judicata* between the parties.

8. The parties waive all right to appeal from this judgment.

About four years after the district court entered the consent judgment, Foster began producing and marketing new models of conveyor equipment, which Foster refers to in its complaint as the "New Conveyors". Foster informed Hallco (succes-

---

1. Hallstrom charged Foster with infringement of the '760 and '587 patents. Foster counterclaimed for a declaration of invalidity and unenforceability of those patents as well as U.S. Patent Nos. 3,530,895; 3,534,875; and 4,144,963; and also included a request for a declaration that it be adjudged the inventor of the invention of the '760 patent and a count for unfair competition.

sor to Hallstrom) that the New Conveyors did not infringe any of the patents in the license agreement, and therefore, pursuant to paragraph 9 of the license agreement, Foster had no obligation to pay royalties to Hallco on sales of them. Hallco disagreed, taking the position that the New Conveyors were covered by the license agreement. In reply, Hallco demanded royalty payments on the New Conveyors by late August 1988.

Foster then filed suit in the district court in Oregon under the Declaratory Judgment Act, seeking a declaration that Hallco's '760 and '587 patents are invalid and unenforceable; that the New Conveyors do not infringe the patents; and that Hallco is in violation of the antitrust laws. Hallco answered asserting, *inter alia,* an affirmative defense of *"res judicata"* arising from the *Foster I* consent judgment.[2]

The case was assigned to a magistrate, and Hallco filed a motion for partial summary judgment on the issues of the validity and enforceability of the two patents. Hallco contended that the consent judgment precluded Foster from litigating those issues. Foster responded that inasmuch as no issue had been litigated in *Foster I,* the consent judgment at most precluded litigation with respect to the product in issue in that suit. The magistrate disagreed, and held that a consent judgment was not necessarily limited only to the device in issue and could cover other devices unless evidence, not present here, showed that the "new" devices fell "outside the construction of the patents" as construed in the first suit. *Foster v. Hallco Mfg. Co., Inc.,* 14 USPQ2d at 1749 (Magistrate's Finding) (D.Ore.1989). The magistrate, however, cited no authority for this proposition.

Foster also asserted that, in any event, the consent judgment declaring a patent valid is unenforceable because it is equivalent to an agreement not to challenge the validity of a patent. Foster based its position on the holding of the Supreme Court in *Lear v. Adkins, supra,* that patent licensees are not precluded from challenging the validity of licensed patents because of the federal policy favoring full and free use of ideas in the public domain. The magistrate upheld Foster's position, relying on the Ninth Circuit's application of *Lear* in *Massillon–Cleveland–Akron Sign Co. v. Golden State Adv'g Co.,* 444 F.2d 425 (9th Cir.), *cert. denied,* 404 U.S. 873, 92 S.Ct. 100, 30 L.Ed.2d 117 (1971), that a settlement agreement of patent litigation was void on its face and unenforceable where a patent licensee promised not to challenge the validity of the patent. The magistrate saw no reason why a consent judgment which coincided with a license agreement should be distinguished from a settlement agreement, noting that a consent judgment usually involves minimal judicial scrutiny and usually is entered without the benefit of any evidence, which apparently was the situation in *Foster I. Foster,* 14 USPQ2d at 1750. Thus, the magistrate concluded that the consent judgment did not bar Foster's attack on the patents. The district court adopted the findings and recommendations of the magistrate in full and denied Hallco's motion for partial summary judgment, although it noted the closeness of the question and the contrary views of other circuits that consent judgments of validity were enforceable despite *Lear.* The court certified its ruling and appeal was then perfected to this court in accordance with 28 U.S.C. § 1292(c)(1) (1988).[3]

**2.** After terminating the license agreement in accordance with paragraph 12, Hallco counterclaimed for infringement. The district court consolidated this action with a second suit brought by Foster against Hallco, in which Foster claimed infringement of its patent on the invention of the New Conveyors by Hallco. Neither Foster's patent, U.S. Patent No. 4,793,469, or any matters involved in that action are in issue on this appeal.

**3.** Appellate jurisdiction in this case rests on the application of the well-pleaded complaint rule in the declaratory judgment context. In this context, we apply the well-pleaded complaint rule to the claims that would be found in the complaint if the declaratory judgment defendant had filed suit. In this case, Hallco counterclaimed that Foster's New Conveyors infringed the '760 and '587 patents, which claim would serve as the basis of its well-pleaded complaint. Thus, applying the well-pleaded complaint rule, this action is one at least in part "arising under

## II

### ISSUES

1. Does the patent policy expressed in *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), override the *res judicata* effect of a consent decree declaring a patent valid?

2. Do principles of *res judicata* applicable to a consent decree bar Foster's challenge to the validity of the '760 and '587 patents?

## III

### A.

*The Patent Policies Expressed in Lear*

In *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), the Supreme Court had before it a suit filed in a California state court by Adkins for royalties under a license agreement entered with Lear, Inc. The license was entered prior to issuance of Adkins' patent on an improved method of making gyroscopes. Adkins alleged royalties were due because Lear was using the later patented invention which was covered by the license agreement. Lear asserted patent invalidity as a defense. In response, Adkins argued that Lear as licensee was estopped to challenge the validity of the patent under state law contract principles.

The California Supreme Court upheld Adkins' position, but the Supreme Court reversed. The Supreme Court referred to its recent decisions emphasizing the "strong federal policy favoring free competition in ideas which do not merit patent protection. *Sears, Roebuck v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964)." *Id.* 395 U.S. at 657, 89 S.Ct. at 1904. . In view of the conflict between this

federal public policy and state law, the Court held that the rule of licensee estoppel was no longer sound law, stating:

"Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest...."

*Id.* at 670–71, 89 S.Ct. at 1911. The Court then abrogated licensee estoppel, thus permitting challenges to validity to proceed not only in the typical situation involving the grant of a license after a patent issues, but also in the case of a pre-issuance licensee, such as in *Lear. Id.* at 672–74, 89 S.Ct. at 1911–13. With respect to a requirement in the license agreement between Adkins and Lear for payment of royalties until the patent was declared invalid, the Court stated:

The parties' contract, however, is no more controlling on this issue than is the State's doctrine of estoppel, which is also rooted in contract principles.

*Id.* at 673, 89 S.Ct. at 1912.

Thus, broadly speaking, *Lear* expresses a policy in favor of precluding restrictions on attacks on patent validity. However, the Court in *Lear* did not deal with the situation where litigation is terminated by a consent decree which by its terms acknowledges a patent's validity. In such a situation, other public policy considerations come into play, namely, preserving the fi-

28 U.S.C. § 1338" for purposes of appellate jurisdiction under 28 U.S.C. §§ 1292(c)(1), 1295(a)(1). *See Speedco, Inc. v. Estes*, 853 F.2d 909, 912, 7 USPQ2d 1637, 1640 (Fed.Cir.1988). Further, given Hallco's overtures that it would terminate the license and sue for infringement if the royalties were not paid on the New Con-

veyors, that Hallco had not terminated the license agreement at the time Foster brought its declaratory judgment action does not divest this court of jurisdiction. *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 219 USPQ 197 (Fed.Cir. 1983).

nality of judgments as well as the strong public policy of encouraging settlements.

As the district court in this case recognized, there is substantial ground for a difference of opinion, indeed, a conflict in precedent of the circuits, on whether *Lear* negates the *res judicata* effect which would otherwise inhere in a consent decree. *Compare Massillon, supra* at 473; *Crane Co. v. Aeroquip Corp.*, 504 F.2d 1086, 183 USPQ 577 (7th Cir.1974); *Kraly v. National Distillers and Chem. Corp.*, 502 F.2d 1366, 183 USPQ 79 (7th Cir.1974) *with American Equipment Corp. v. Wikomi Mfg. Co.*, 630 F.2d 544, 208 USPQ 465 (7th Cir.1980); *Safe Flight Instrument Corp. v. United Control Corp.*, 576 F.2d 1340, 197 USPQ 849 (9th Cir.1978); *Wallace Clark & Co. v. Acheson Indus., Inc.*, 532 F.2d 846 (2d Cir.), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 *reh'g denied*, 427 U.S. 908, 96 S.Ct. 3194, 49 L.Ed.2d 1200 (1976).[4] Upon consideration of that issue, as discussed more fully below, we conclude that general principles of *res judicata* apply, despite the policies favoring challenges to validity expressed in *Lear*.

### B.

### *Choice of Law*

As Hallco correctly points out, the first significant legal question posed by the district court's conclusion pertains to choice of law. A district court must, of course, follow Federal Circuit precedent in a case arising under the patent laws, 35 U.S.C. §§ 1 *et seq. See Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1573, 223 USPQ 465, 470 (Fed.Cir. 1984). This case, though, presents a question of first impression, namely, whether this circuit should adopt its own interpretation of *Lear* as applied to the *res judicata* effect of a consent judgment with respect to the issue of validity, or should direct the

district courts to follow its regional circuit's interpretation. As explained in *Panduit Corp.*, 744 F.2d at 1572–76, 223 USPQ at 469–72, the primary reason for applying Federal Circuit law lies in the need for reducing the potential for widespread uncertainty and nonuniformity in legal doctrine in the particular areas of the law within our jurisdiction. That objective was one of the fundamental purposes for establishing the Federal Circuit. See S.Rep. 97–275, 97th Cong., 1st Sess. 5, *reprinted in* 1982 U.S.Code Cong. & Admin.News, 11, 15. H.R.Rep. 97–312, 97th Cong., 1st Sess. 23; *see also KSM Fastening Sys., Inc. v. H.A. Jones, Co.*, 776 F.2d 1522, 1527, 227 USPQ 676, 679 (Fed.Cir.1985).

We perceive a clear need for uniformity and certainty in the interpretation of *Lear* as applied to a consent decree holding a patent valid and infringed. The central question here is not simply whether we should apply the regional circuit's law of *res judicata* with respect to a consent decree, but whether the public policies expressed in *Lear* override the general *res judicata* principles which would otherwise apply. If regional circuit interpretations of *Lear*'s applicability to *res judicata* applied in a suit arising under the patent laws, a split would instantaneously result and forum shopping for resolution of that issue would be encouraged. *See supra* at 475. We cannot embrace a principle of law that would run afoul of one of the fundamental purposes for this court's creation, and thus we conclude that the Federal Circuit is obligated to set forth its own interpretation of the effect of *Lear* on consent judgments.[5]

### C.

### *Res Judicata* and *Lear* Policies

The principles of law denominated *"res judicata"* embody the public policy of put-

---

4. For insight into the complex currents which must be navigated to determine the enforceability of consent decrees adjudicating validity in light of *Lear* in the Seventh Circuit alone, *see American Equip.*, 630 F.2d at 547–48, & n. 3, 208 USPQ at 468 & n. 3.

5. The district court's conclusion to the contrary, that it was bound to follow the Ninth Circuit precedent of *Massillon* to resolve the *Lear* question, constitutes legal error. In making our own analysis of the *Lear* question, we undertake concurrently to determine whether such error was harmful.

ting an end to litigation. As stated by the Supreme Court in *Southern Pacific R.R. Co. v. United States*, 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897):

> [The] general rule [of res judicata] is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals, in respect of all matters properly put in issue and actually determined by them.

See also 18 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure*, § 4403 at 15 (1981) (Repose is the most important product of *res judicata*).

■ In its simplest construct, *res judicata* precludes the relitigation of a claim, or cause of action, or any possible defense to the cause of action which is ended by a judgment of the court. *See Restatement (Second) of Judgments*, §§ 18, 19 (1982). This aspect of *res judicata*, known in modern parlance as "claim preclusion", applies whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon the consent of the parties. *See, e.g., Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); *Kaspar Wire Works, Inc. v. Leco Eng'g and Mach., Inc.*, 575 F.2d 530, 538–39, 198 USPQ 513, 518–19 (5th Cir.1978); 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure*, § 4443 at 385 (1981) (consent judgments ordinarily support claim preclusion but not issue preclusion).

■ The Supreme Court in *Lear* did not consider the policy concerns evoked when preserving the finality of a judgment, but only the policies involved in resolving the right of a patent licensee to challenge the validity of the licensed patent in a suit for royalties under the contract. That ques-tion puts at odds only the binding effect of contract provisions under state contract law and the federal patent policy favoring free use of ideas rightfully belonging to the public domain:

> The uncertain status of licensee estoppel in the case law is a product of judicial efforts to accommodate the competing demands of the common law of contracts and the federal law of patents. On the one hand, the law of contracts forbids a purchaser to repudiate his promises simply because he later becomes dissatisfied with the bargain he has made. On the other hand, federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent.

*Lear*, 395 U.S. at 668, 89 S.Ct. at 1910.

■ The application of *res judicata* principles, thus, involves a public policy totally absent from *Lear*. We are aware of no court which has even suggested that *Lear* abrogates the application of *res judicata* principles based on a judgment imposed by the court after full litigation. Nevertheless, some courts, like the court here, have held that a consent judgment, unlike an imposed judgment, runs afoul of *Lear* even with respect to the same cause of action (*i.e.*, a suit on the same device alleged to infringe the same patent) on the theory that *Lear* precludes parties from removing possible challenges to validity merely by their agreement. Rejecting this theory, the Sixth Circuit stated in *Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d 775, 781, 187 USPQ 417, 422 (6th Cir.1975) *cert. denied*, 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976):

> The public interest requires that an invalid patent be [held invalid] at as early a date as possible. When a consent decree is to be given *res judicata* effect, litigants are encouraged to litigate the issue of validity rather than foreclosing themselves by a consent decree. If they were given a second chance to litigate the issue of validity, alleged infringers might well accept a license under a consent decree and forego an attack on validity until favored by a stronger finan-

cial position, or until threatened by other manufacturers who were not paying royalties. By giving *res judicata* effect to consent decrees this court protects the public interest in that an alleged infringer is deprived of a judicial device which could be used to postpone and delay a final adjudication.

*See also American Equip.*, 630 F.2d at 548, 208 USPQ at 469. We agree with this analysis. Moreover, the Federal Circuit has repeatedly expressed the view that there is a strong public interest in settlement of patent litigation. *See Hartley v. Mentor Corp.*, 869 F.2d 1469, 1473 n. 5, 10 USPQ2d 1138, 1142 n. 5 (Fed.Cir.1989); *Hemstreet v. Speigel, Inc.*, 851 F.2d 348, 350, 7 USPQ2d 1502, 1504 (Fed.Cir.1988). A binding consent judgment encourages patent owners to agree to settlement and to remove its force would have an adverse effect on settlement negotiations. *See id.*

Thus, unlike *Lear*, where there was a conflict between federal patent policy and state law of contracts, here we have strong competing policies that do not implicate questions of the primacy of federal over state law. One policy seeks to outlaw restriction of challenges to validity of patents; the other favors the finality of judgments generally and the encouragement of settlements of litigation in particular, including settlements resulting in a consent judgment. In this light, we cannot conclude that the public policy expressed in *Lear* is so overriding that challenges to validity must be allowed when under normal principles of *res judicata* applicable to a consent judgment, such challenge would

be precluded.[6] Accordingly, we reverse the district court's ruling on this issue.

### D.

### Preclusive Effect of the *Foster I* Consent Judgment

Foster urges that, even if the district court's interpretation of *Lear* is in error, we should affirm the denial of Hallco's motion for partial summary judgment because, under *res judicata* principles, the consent decree operates to bar consideration of the issue of validity only in future litigation with respect to the products of the *Foster I* suit. That is, Foster urges that the consent judgment is restricted in effect to claim preclusion. Hallco, on the other hand, urges that, if we go beyond the *Lear* question, summary judgment should be granted in its favor under both claim and issue preclusion principles.

Adjudication of this appeal is not necessarily limited to the *Lear* question alone but may extend to other issues which would enable us to determine the correctness of the district court order. *See Cordis Corp. v. Medtronic, Inc.*, 780 F.2d 991, 993–94, 228 USPQ 189, 191 (Fed.Cir.1985). Accordingly, we address the question whether the order denying summary judgment should be upheld on the alternative ground urged by Foster or reversed on the grounds urged by Hallco. We conclude that the position of neither party can be sustained on the record before us inasmuch as there are material questions of either law or fact which the district court did not address.[7]

---

**6.** As support for this conclusion, we also note that it is in accord with prior decisions of this circuit on related issues discussing *Lear* principles, albeit not directly on the issues of foreclosing challenges to validity or res judicata. *See Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978, 991–93, 10 USPQ2d 1338, 1349–50 (Fed.Cir.1989) (patent policy expressed in *Lear* does not bar enforcement of contract promise to share royalties); *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350–51, 7 USPQ2d 1502, 1504–05 (Fed.Cir.1988) (patent policy expressed in *Lear* does not bar enforcement of term in settlement agreement consenting to pay royalties even if patent later held invalid); *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224, 6

USPQ2d 2028, 2031 (Fed.Cir.), *cert. dismissed*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 978 (1988) (patent policy expressed in *Lear* does not abrogate doctrine of assignor estoppel).

**7.** Having resolved the *Lear* issue as a matter of Federal Circuit law, we take into consideration the law of the regional circuit, here the Ninth, on the application of general principles of *res judicata* with respect to a consent judgment. *See Hartley*, 869 F.2d at 1471 n. 1, 10 USPQ2d at 1139, n. 1; *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576, 10 USPQ2d 1296, 1298–99 (Fed.Cir.), *cert. denied*, 493 U.S. 855, 110 S.Ct. 160, 107 L.Ed.2d 117 (1989). In so doing, however, we note that the parties are in agreement that they discern no significant difference be-

Preliminarily, we address a point of nomenclature. In older case law, courts sometimes spoke of *res judicata* in contrast to collateral estoppel. However, because *res judicata* can also be used in the sense of any preclusion of litigation arising from a judgment, including collateral estoppel, when discussing the different concepts, courts, including the Ninth Circuit and this Circuit, for clarity have substituted the terms "claim preclusion" and "issue preclusion." *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); *Haphey v. Linn County*, 924 F.2d 1512, 1515 (9th Cir.1991); *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314, 219 USPQ 1142, 1150–51 (Fed.Cir.1983). However, to speak of preclusion of litigation of a patent claim can also be misinterpreted to mean either a reference to litigation on a claim *in* a patent or a claim, in the sense of a cause of action, *on* a patent. We will be speaking herein of a patent claim in the latter sense only. Nevertheless, where necessary for clarity we will also use "cause of action" as a synonym for "claim."

(1)

*Claim Preclusion*

■ The general concept of claim preclusion is that when a judgment is rendered in favor of a party to litigation, the plaintiff may not thereafter maintain another action on the same "claim," and defenses that were raised or *could have been* raised by the defendant in that action are extinguished. *See Restatement (Second) of Judgments*, §§ 18, 19 & comments (emphasis added). There is no dispute that, as previously stated, claim preclusion principles apply to a consent judgment. *See supra* at 477. The question with respect to claim preclusion turns on whether this suit

presents the same claim (cause of action) as that of *Foster I*.

Foster maintains that because this suit involves materially different allegedly infringing devices from those of *Foster I*, claim preclusion cannot apply. Hallco acknowledges that the devices in this suit are "somewhat different" but argues that Foster raises the same "claim" of invalidity. The magistrate acknowledged that Foster submitted some evidence that the devices of this suit were "materially different" but deemed that point irrelevant to preclusion unless Foster's new device "falls outside of the construction of the patents" in *Foster I. Foster*, 14 USPQ2d at 1749. Having previously stated that issue preclusion applied only as to issues actually litigated, which was not the case in *Foster I*, the magistrate appears to have considered claim preclusion as a bar to Foster's declaratory judgment suit absent the decisions in *Lear* and *Massillon*.

■ Hallco's argument goes astray in viewing Foster's challenge to validity as in itself a "claim" within the meaning of *res judicata* principles. In this connection, "claim" does not mean merely "argument" or "assertion." "Claim" is used in the sense of the facts giving rise to the suit. As explained in section 24 of the Restatement:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such con-

tween the Ninth Circuit and Federal Circuit in the understanding of these principles or their application, and both circuits are guided by the views set out in the Restatement. *Compare Jackson Jordan, Inc. v. Plasser American Corp.*, 747 F.2d 1567, 1575–78, 224 USPQ 1, 7–9 (Fed. Cir.1984); *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314–17, 219

USPQ 1142, 1150–53 (Fed.Cir.1983); *and California v. Federal Communications Comm'n*, 905 F.2d 1217, 1245 n. 39 (9th Cir.1990); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 & n. 2 (9th Cir.1988). Thus, we rely on the principles set out in the Restatement and freely refer to precedent on issue and claim preclusion from both circuits.

siderations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Restatement (Second) of Judgments,* § 24. Thus, a "claim" rests on a particular factual transaction or series thereof on which a suit is brought. An assertion of invalidity of a patent by an alleged infringer is not a "claim" but a defense to the patent owner's "claim." [8] The acts of obtaining an invalid patent alone create no legal right to a remedy in another. *International Medical Prosthetics Research Assocs. v. Gore Enterp. Holdings, Inc.,* 787 F.2d 572, 576, 229 USPQ 278, 281 (Fed.Cir.1986). While defenses to a "claim" are extinguished by application of the doctrine of claim preclusion, the facts related to the defense do not in themselves constitute the transaction or "claim." *See, e.g., Restatement (Second) of Judgments,* § 22 comments (b), (c) at 186–87.

Similarly, that the issues of invalidity and enforceability are raised in a declaratory judgment action does not change what is the "claim." The basis for maintaining a declaratory judgment for invalidity rests on the existence of a "case of actual controversy", cognizable in federal court. 28 U.S.C. § 2201 (1988); *cf. Animal Legal Defense Fund v. Quigg,* 932 F.2d 920, 925, 18 USPQ2d 1677, 1681 (Fed.Cir. 1991). In the patent context this court has interpreted a "case of actual controversy" to require, at a minimum, the existence of sufficient acts by both parties which support an actual charge of infringement or at least a reasonable belief that a suit for infringement will be brought. *See Spectronics Corp. v. H.B. Fuller Co., Inc.,* 940 F.2d 631 (Fed.Cir.1991); *Lang v. Pacific*

*Marine and Supply Co.,* 895 F.2d 761, 764, 13 USPQ2d 1820, 1821–22 (Fed.Cir.1990). The transactional foundation which supports a declaratory judgment action rests on the facts respecting the patent owner's *claim* for infringement. Without that controversy, no suit under the Declaratory Judgment Act could be maintained because, as the Supreme Court has said, the Declaratory Judgment Act gives no independent basis for subject matter jurisdiction in district court. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). In a declaratory judgment action, invalidity is but an anticipatory defense, and the "claim" of the declaratory judgment suit is based on the facts related to the patent owner's charge of infringement. Thus, claim preclusion applies in this case only if Hallco's infringement claim rests on the same transactional facts as in *Foster I. See Restatement (Second) of Judgments,* § 18(2).

An essential fact of a patent infringement claim is the structure of the device or devices in issue. As stated by this court in *Young Eng'rs,* 721 F.2d at 1316, 219 USPQ at 1152:

With respect to patent litigation, we are unpersuaded that an "infringement claim," for purposes of claim preclusion, embraces more than the specific devices before the court in the first suit. Adjudication of [liability for] infringement is a determination that a thing is made, used or sold without authority under the claim(s) of a valid enforceable patent. Thus, the status of an infringer is derived from the status imposed on the thing that is embraced by the asserted patent claims, the thing adjudged to be infringing....

It follows that for claim preclusion to apply here, the devices in the two suits must be

---

**8.** According to section 282 of Title 35 United States Code, validity and unenforceability are *defenses:*

The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

(1) Noninfringement, absence of liability for infringement, or unenforceability,

(2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,

(3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title,....

35 U.S.C. § 282 (1988). *See also Cornwall v. United States Construction Mfg., Inc.,* 800 F.2d 250, 231 USPQ 64 (Fed.Cir.1986).

essentially the same. Moreover, as the party asserting claim preclusion, it is Hallco's burden to show that the New Conveyors are essentially the same as those in *Foster I. Id.* Colorable changes in an infringing device or changes unrelated to the limitations in the claim of the patent would not present a new cause of action. *Cf. KSM,* 776 F.2d at 1530–32, 227 USPQ at 682–84 (showing that changes to devices are only "colorably different" from those previously adjudged to infringe enables a contempt proceeding on a prior judgment to proceed).

We are unsure of whether the magistrate was analyzing claim preclusion or issue preclusion by saying that to avoid preclusion by *Foster I,* Foster had to show that its new device fell "outside the scope of the construction of the patent." Magistrate Findings at 8. As indicated, this appears appropriate to an infringement analysis which would implicate claim preclusion. However, whatever its meaning, the magistrate clearly erred by placing the ultimate burden on Foster to show that a different cause of action was presented here rather than requiring Hallco, the proponent of claim preclusion, to show that the cause of action in the two suits was the same. *See Young Eng'rs,* 721 F.2d at 1316, 219 USPQ at 1152.

In any event, Foster is correct that a new claim is presented by this suit if its new devices are materially different from those of *Foster I.* However, we find it inappropriate to rule on the evidence of "material differences" in the first instance and leave it to the trial court to determine whether this suit is based on a different claim, *i.e.,* cause of action for patent infringement, from that of *Foster I.* If a different claim is involved, there is no claim preclusion.

### Issue Preclusion: Litigated Issues

■ Section 27 of the Restatement states the general rule of issue preclusion: When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments,* § 27. A rationale for the rule of issue preclusion is that once a legal or factual issue has been settled by the court after a trial in which it was fully and fairly litigated that *issue* should enjoy repose. *See Southern Pacific R.R.,* 168 U.S. at 48–49, 18 S.Ct. at 27–28. Such litigated issues may not be relitigated even in an action on a different claim between the parties. *See Restatement (Second) of Judgments,* § 27 comment (e) & note at 267–68; *Young Eng'rs,* 721 F.2d at 1316, 219 USPQ at 1152; *Jackson Jordan,* 747 F.2d at 1575–76, 224 USPQ at 7; *Eilrich v. Remas,* 839 F.2d 630, 632 (9th Cir.1988); *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1520 (9th Cir.1987). Where a judgment between parties is entered by consent prior to trial on any issue, no issue may be said to have been fully, fairly or actually litigated. *See Restatement,* § 27 comment (e) at 257; *Kaspar Wire Works,* 575 F.2d at 537, 198 USPQ at 518. Thus, the general rule that issue preclusion does not arise from a consent judgment would allow Foster's challenge to validity on a different claim inasmuch as no issue was actually tried and disposed of by decision of the court in *Foster I.*

### Issue Preclusion: Stipulated Issues

■ As both parties recognize, there has come into existence a form of issue preclusion in connection with consent judgments that is not dependent on actual litigation of the matter. *See Restatement (Second) of Judgements,* § 27 comment (e) & note at 269. According to that commentary, "the [issue preclusive] effect results not from the rule of [§ 27] but from an agreement manifesting an intention to be bound." *Id.; see also Green v. Ancora–Citronelle Corp.,* 577 F.2d 1380, 1383 (9th Cir.1978) (cited in *Restatement*); *Hartley,* 869 F.2d at 1471, 10 USPQ2d at 1140. Thus, if a consent judgment, by its terms, indicates that the parties thereto intend to preclude any challenge to the validity of a particular patent, even in subsequent litiga-

tion involving a new cause of action, then that issue can be precluded.

The Restatement specifically endorses the proposition that consent judgments asserted to give rise to *issue* preclusion must be narrowly construed, stating that "such an intention should not readily be inferred," citing *Hentschel v. Smith,* 278 Minn. 86, 153 N.W.2d 199 (1967). *See Restatement,* § 27 comment (e) notes at 269; *see also Red Lake Band v. United States,* 607 F.2d 930, 934, 221 Ct.Cl. 325 (1979). By requiring parties to be specific in qualifying the application of the general rules of issue preclusion, courts are not then required to speculate as to the intent of the parties based on broad, general and ambiguous language. Thus, following the Restatement, we adopt the position that provisions in a consent judgment asserted to preclude litigation of the issue of validity in connection with a new claim must be construed narrowly.

This position strikes a reasonable balance between the policy considerations enunciated in *Lear,* and those favoring voluntary settlement of litigation. While we have concluded that the *Lear* policy considerations do not mandate that future challenges to a patent's validity cannot be barred by a consent judgment, such considerations should weigh into the interpretation of the terms in a consent judgment for purposes of issue preclusion. Barring subsequent challenges favors the public policy of encouraging voluntary settlement; at the same time, a narrow construction of such provisions favors challenges to validity. Thus, a balance in the policy expressed in *Lear* and the interest in encouraging settlement is achieved.

Finally, this position is in accord with Supreme Court admonitions that the scope of a consent decree is limited to its terms and that its meaning should not be strained. As stated in *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971):

Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus, the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation. [Footnote omitted.]

The parties disagree on whether the terms of the consent decree express an intent that the issue of validity be precluded in future litigation of a different claim. Hallco points to the language stating that the patents "are valid and enforceable in all respects" and that the Consent Judgment "is binding upon and constitutes *res judicata* between the parties" as evidencing the parties' intent that the stipulation was to encompass more than the Foster products in suit.

Foster counters that there is no language in the consent decree that Foster would be precluded on any issue on a new claim respecting new products and that the references to "valid and enforceable in all respects" is consistent with the general rules of claim preclusion. Moreover, it argues that the phrase "res judicata" has, with respect to a new claim, no more pre-

clusive effect on the issue of validity than on the issue of infringement. Neither issue having been litigated, per Foster, neither is precluded under general application of *res judicata* principles to a new claim.

We can only conclude that the language of the decree is ambiguous with respect to barring the defense of invalidity with respect to different devices charged to be infringements.[9] Except for the few words that Hallco points to which may not be boiler plate, nothing appears in the decree to which issue preclusion arguably could be tied. The clauses are slender reeds in themselves on which to rest its position that the parties *intended* to preclude particular issues—namely validity and enforceability—in future litigation of a different claim.

■ Both parties ask us to consider extrinsic evidence which is purported to show that the parties intended or did not intend to preclude the validity issue with respect to any *new* claim. Hallco points, for example, to Foster's deposition testimony and a letter from Mr. Foster to his attorney. We do not understand the admonition in *Armour & Co.*, quoted above, that the scope of a consent decree must be discerned "within its four corners", to mean that extrinsic evidence may not be introduced when directed to ascertaining the meaning of ambiguous language in a decree. That admonition succinctly points out only that it is not the role of the court to expand or contract the agreement by adding to or deleting from its language. Such evidence is, indeed, relevant to ascertaining what the parties intended the terms in their agreement to mean. *See Restatement (Second) of Judgments*, § 27 comment (e) note at 269.

Nonetheless, we decline to evaluate the persuasiveness of the proffered evidence in the first instance. This appeal is before us on the denial of Hallco's summary judgment motion. While the interpretation of the terms of the decree is an issue of law,

if resort must be made to conflicting extrinsic evidence to determine the parties' intent, we would be faced with a factual issue on which the trial court has not passed, at least not under the correct "narrow construction" legal standard. *See Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 414 (Fed.Cir.1988) ("Although interpretation of the [contract] clause at issue normally is a question of law freely reviewable by this court, there may be fact questions to resolve in instances of ambiguous contracts.") *See also Favell v. United States*, 16 Cl.Ct. 700, 716 (1989) (citing *United States v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1343–45 (9th Cir.1981); *Charbonnages de France v. Smith*, 597 F.2d 406, 414–15 (4th Cir.1979); *Peoples Outfitting Co. v. General Elec. Credit Corp.*, 549 F.2d 42, 45 (7th Cir. 1977); *S.J. Groves & Sons Co. v. Ohio Turnpike Comm'n*, 315 F.2d 235, 237–38 (6th Cir.), *cert. denied*, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963)). Thus, if the evidence presented here raises a genuine issue of fact as to intent, the summary judgment motion must be denied and the parties must proceed with trial of that issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 733–35 (9th Cir. 1986).

As a final point, both parties commit significant time and space to argument that certain provisions of *the license* are pertinent to the question of the parties' intent to bar Foster from challenging the validity of the '760 and '587 patents on new infringement claims. Suffice to say, the evidentiary value, if any, of the license provisions as indicative of the parties' intent as expressed in the consent judgment must be determined on remand.

### *Summary of Res Judicata*

In view of the district court's holding that a consent judgment provision declar-

---

9. Despite Hallco's contentions, *Epic Metals*, 870 F.2d at 1576–77, 10 USPQ2d at 1298–99, is not to the contrary. *Epic Metals* involved the same claim and the infringer sought to avoid the general rule of claim preclusion which bars relitigation of all issues by reason of language in an express exception in the consent decree. This court held that relitigation of validity did not fall within the reservation and, thus, was barred.

ing a patent valid could have no *res judicata* effect under *Lear,* it was unnecessary for that court to distinguish precisely between claim and issue preclusion. In its view a consent decree was void regardless of whether the same or materially different devices were involved in the subsequent litigation. However, the distinction between claim and issue preclusion is critical in this case. If this suit involves the same cause of action for patent infringement (claim) as that of *Foster I,* the issue of validity (as well as infringement) is barred by the consent judgment. If this suit involves a different cause of action from that of *Foster I,* the issue of validity may or may not be barred. We are unable to rule on any of these questions as a matter of law and, accordingly, must vacate the district court's summary judgment ruling and remand for its full analysis of these issues in accordance with this opinion.

### IV

### CONCLUSION

*Lear v. Adkins* does not abrogate general principles of *res judicata* with respect to the issue of the validity of a patent. If the consent decree here would foreclose subsequent challenges to validity of a patent under general rules of *res judicata,* the patent policy expressed in *Lear v. Adkins* does not change that effect, and the decision of the district court here to the contrary is therefore reversed. The applicability of *res judicata* principles to the New Conveyers cannot be resolved in this appeal and thus the cause is remanded to the district court for reconsideration in accordance with this opinion.

### V

### COSTS

Each party shall bear its own costs.

REVERSED–IN–PART, VACATED and REMANDED.