# United States Court of Appeals for the Federal Circuit

2009-1026


RON NYSTROM,

Plaintiff-Appellant,

v.


TREX COMPANY, INC., and SNAVELY FOREST PRODUCTS INC.,

Defendants-Appellees,

and

HOME DEPOT USA, INC.,

Defendant-Appellee.


Joseph S. Presta, Nixon & Vanderhye, P.C., of Arlington, Virginia, argued for plaintiff-appellant.

Patrick J. Coyne, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for all defendants-appellees. With him on the brief for Trex Company, Inc., et al., was Troy E. Grabow. On the brief for Home Depot USA, Inc., was Christopher E. Gatewood, Hirschler Fleischer, P.C., of Richmond, Virginia. Of counsel was R. Webb Moore.

Appealed from: United States District Court for the Eastern District of Virginia

Judge Mark S. Davis

# United States Court of Appeals for the Federal Circuit

2009-1026

RON NYSTROM,

Plaintiff-Appellant,

v.

TREX COMPANY, INC., and SNAVELY FOREST PRODUCTS INC.,

Defendants-Appellees.

and

HOME DEPOT USA, INC.,

Defendant-Appellees.

Appeal from the United States District Court for the Eastern District of Virginia in case no. 2:06-CV-00569, Judge Mark S. Davis.

_____

DECIDED:  September 8, 2009

_____

Before MICHEL, <u>Chief Judge</u>, RADER and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> RADER.  Additional views filed by <u>Circuit Judge</u> RADER.

RADER, <u>Circuit Judge</u>.

The United States District Court for the Eastern District of Virginia held that plaintiff Ron Nystrom was not precluded on <u>res judicata</u> grounds from litigating his infringement claim against Trex Company, Inc., Home Depot USA, Inc., and Snavely

Forest Products Inc. (collectively, Defendants). The district court also held that Defendants did not infringe the asserted claims of U.S. Patent No. 5,474,831 (the '831 patent). Because the patentee forfeited his right to bring an infringement claim in a previously adjudicated patent suit, this court affirms the district court's judgment on alternative grounds.

I.

Ron Nystrom is a working carpenter. He is the sole inventor and owner of the '831 patent. The '831 patent is directed to an outdoor wood-flooring board shaped to shed water from its upper surface while still maintaining a comfortable surface on which to walk. '831 patent col.10 ll.10-12. The board also has a bottom surface shaped to more readily allow for board stacking. Id. col. 10 ll.15-18. A representative figure from the '831 patent is below:



FIG. 2

As shown, the top of the board is in a convex shape so that water will flow from its middle to its sides. Correspondingly, the bottom of the board is concave so that other boards can be stacked below it. Claim 1 contains all pertinent terms and is representative of the asserted claims:

> 1. A <u>board</u> for use in constructing a flooring surface for exterior use, said board having a top surface, a bottom surface and opposite side edges, said top surface being <u>manufactured to have</u> a slightly rounded or curved configuration from a longitudinal center line thereof downwardly toward each side edge, thereby defining a convex top surface which sheds water and at the same time is comfortable to walk on, and said bottom surface having a concave configuration for nesting engagement with the top surface of another board so that a plurality of the boards may be stacked one on top of the other with the stability of conventional boards having flat top and bottom surfaces.

<u>Id</u>. col.4 ll.19-30 (emphases added).

This court is no stranger to this patent and these parties. In December 2001, Nystrom filed a complaint naming Trex as the sole defendant. Trex is a manufacturer of wood-composite decking boards for use in constructing exterior flooring surfaces, such as decks, docks, and porches. In the complaint, Nystrom alleged that Trex's first generation wood-composite boards (Trex I boards) infringed the '831 patent. The Trex I boards were made from composites of approximately fifty- to sixty-percent wood fibers and forty- to fifty-percent recycled plastic. Trex makes the products according to the following process. First, sawdust and plastic are conveyed to a hopper where they are mixed in roughly equal portions by weight. Second, the resulting mixture is conveyed to an extruder where it is compressed and squeezed through an opening in the desired shape, i.e, a decking board. Third, the material exits the extruder through a die that forms the material into the desired shape. Fourth, the material is cooled in a water bath and hardened to ensure retention of the desired shape.

After briefing and argument, the district court construed three terms: (1) "board"; (2) "manufactured to have"; and (3) "convex top surface." Nystrom v. Trex Co., Inc., No. 2:01cv905 (E.D. Va. Aug. 19, 2002). The trial court construed "board" to mean a "piece of elongated construction material made from wood cut from a log." The trial court also construed "manufactured to have" to mean "a manufacturing process utilizing woodworking techniques" and "convex top surface" to mean "an upper surface with an outward curve that has a ratio of its radius of curvature to width of the board between about 4:1 to 6:1." Based on these constructions, Nystrom conceded that he "lack[ed] sufficient evidence to prove infringement." Both parties moved for summary judgment of noninfringement on all claims. The district court granted the motion and entered judgment of noninfringement.

Nystrom appealed. On appeal, this court ultimately affirmed the district court's constructions of "board" and "manufactured to have," but reversed on the "convex top surface" limitation. Nystrom v. Trex Co., 424 F.3d 1136, 1142-48 (Fed. Cir. 2005). On remand, Nystrom attempted to pursue his infringement claim under the doctrine of equivalents. Noting that Nystrom had previously stipulated to "non-infringement" without reference to equivalents in the first action, the district court held that Nystrom had waived the argument. Nystrom again appealed and, in a per curiam opinion directly following oral argument, this court affirmed the district court's holding that Nystrom had waived his infringement claim based on the doctrine of equivalents.

Days after that opinion mandated, Nystrom filed a second suit—the subject of the present appeal—naming Trex, Home Depot, and Snavely Forest Products as defendants. Home Depot and Snavely Forest Products are distributors of Trex

products.  In the complaint, Nystrom alleged that Trex had released second-generation products (Trex II boards) that infringed the '831 patent.  According to Nystrom, these products could not have been included in the first suit because they reached the market after the filing date of the original December 2001 complaint.  In this suit, Nystrom based his infringement claim solely on the doctrine of equivalents.  Trex then moved for summary judgment to bar Nystrom under the doctrine of res judicata from relitigating infringement because the Trex II boards were essentially the same as the Trex I boards.  Trex also moved for summary adjudication to prohibit Nystrom from relying on the doctrine of equivalents because of:  (1) claim vitiation; (2) argument-based estoppel; and (3) amendment-based estoppel.  The district court granted summary judgment on vitiation and argument-based estoppel, but denied Trex's motion on res judicata and amendment-based estoppel.  Nystrom timely appealed.  This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.

This court reviews a decision to bar or not bar an infringement claim based on prior litigation as a question of law without deference.  See Hallco Mfg. Co. v. Foster, 256 F.3d 1290, 1294 (Fed. Cir. 2001).  "In its simplest construct, res judicata precludes the relitigation of a claim, or cause of action, or any possible defense to the cause of action which is ended by a judgment of the court.  This aspect of res judicata, known in modern parlance as 'claim preclusion', applies whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon the consent of the parties."  Foster v. Hallco Mfg. Co., 947 F.2d 469, 476 (Fed. Cir. 1991) (citations omitted).  Because the present issue of claim preclusion is one particular to

patent law, this court applies its own law without reference to regional circuit law. See Hallco, 256 F.3d at 1294.

For claim preclusion in a patent case, an accused infringer must show that the accused product or process in the second suit is "essentially the same" as the accused product or process in the first suit. Foster, 947 F.2d at 480. "Colorable changes in an infringing device or changes unrelated to the limitations in the claim of the patent would not present a new cause of action." Id. Where an accused infringer has prevailed in an infringement suit, "the accused devices have the status of noninfringements, and the defendant acquires the status of a noninfringer to that extent." Young Eng'rs, Inc. v. U.S. Int'l. Trade Comm'n, 721 F.2d 1305, 1316 (Fed. Cir. 1983).

Significantly, for purposes of its summary judgment motion and this appeal, Defendants concede material differences between the Trex I boards and the Trex II boards. These differences include shape, smoothness, and surface irregularity. Defendants, however, note that the only two limitations leading to the judgment of noninfringement in the first suit—"board" and "manufactured to have"—are in all material respects the same in the Trex I boards and the Trex II boards. That is, Defendants maintain that Trex made the Trex I and Trex II boards using the same process to produce the wood composite. Without material differences, Defendants seek to bar Nystrom from litigating his suit against the Trex II boards. The district court rejected this argument focusing instead on Defendants' admission of material differences in other claimed features.

This case thus presents a slightly new angle on claim preclusion. It asks whether the accused infringer may assert claim preclusion when the sole claim limitations at

issue in the first suit remain unchanged in the second suit. This court has previously emphasized that the focus for claim preclusion should be on "material differences" between the two accused devices, see Foster, 947 F.2d at 480, but has not addressed directly whether the focus of the "material differences" test is on the claim limitations at issue in each particular case.

Turning to that question, this court has already determined in the earlier case that Trex I boards do not infringe the '831 patent. That judgment applies to both literal infringement and, as a result of Nystrom's waiver, infringement by equivalents. For Nystrom to succeed on his infringement claim against the Trex II boards, he will have to prove infringement of each claim limitation. See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 812 (Fed. Cir. 2002) ("To prove infringement, the patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents."). The only claim limitations at issue in the first suit were "board" and "manufactured to have." The constructions for these terms in this suit are the same as the constructions in the first suit. The bases of noninfringement in the first suit were these constructions. If, therefore, the accused device of the second suit remains unchanged with respect to the corresponding claim limitations at issue in the first suit, then Nystrom has no remaining avenue to pursue his claims now. In essence, Nystrom would be attempting to prove infringement of the same claim limitations as to the same features of the accused devices. As such, this case presents the exact situation that res judicata seeks to prevent. Res judicata thus bars this second attempt to adjudicate the same issues.

The analysis thus far has assumed that the Trex I boards and Trex II boards are insubstantially different with respect to the pertinent claim elements. Nystrom contests this assumption. In particular, Nystrom argues that several new features were added to the Trex II boards that are material to the "wood cut from a log" and "manufactured utilizing woodworking techniques" constructions. First, simulated wood grain was added to the top of the Trex II board to give it a more wood-like feel. Second, changes to the profile and top surface consistency make the Trex II board look more like a wood board. Third, the color of the Trex II boards was changed to a more wood-like shade.

These changes, however, do not alter the application of claim preclusion. Nystrom's alleged differences fall squarely within the "colorable changes" category that this court has highlighted in the past. Foster, 947 F.2d at 480. The record demonstrates that the composition of the Trex II board is the same as the Trex I board—approximately fifty to sixty percent wood fibers and forty to fifty percent recycled plastic. Simply adding a wood grain and changing the board's color does not materially alter the infringement analysis of the "wood cut from a log" limitation.

Similarly, Nystrom's alleged differences do not directly speak to the "manufactured utilizing wordworking techniques" construction. That is, the process used to make the Trex II board is the same process used to make the Trex I board. The addition of wood grain or a change in color does not alter this limitation either in any way material to the infringement inquiry.

In sum, Nystrom made a tactical decision in his initial suit to forego any infringement theory based on the doctrine of equivalents. That choice did not pay off. Given that the Trex II boards remain materially identical to the Trex I boards with

respect to the pertinent claim limitations at issue, this court cannot under <u>res judicata</u> permit Nystom to have a second bite at the apple.

III.

For the above-stated reasons, Nystrom waived his right to pursue an infringement claim under the doctrine of equivalents in the first infringement suit brought against Trex. The district court therefore erred by denying Defendants' motion for summary judgment to preclude Nystrom's second suit on <u>res judicata</u> grounds.

<u>AFFIRMED</u>

COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

2009-1026

RON NYSTROM,

Plaintiff-Appellant,

v.

TREX COMPANY, INC., and SNAVELY FOREST PRODUCTS INC.,

Defendants-Appellees.

and

HOME  DEPOT USA, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Virginia in case no. 2:06-CV-00569, Judge Mark S. Davis.

RADER, <u>Circuit Judge</u>, additional views.

While I endorse the reasoning and results of the panel, I write separately to address the doctrine of claim vitiation.  In <u>Warner-Jenkinson</u>, the Supreme Court adopted this court's established "all-elements" rule.  <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 39 n.8 (1997) ("[U]nder the particular facts of a case, . . . if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court . . . .").  "Informed by this guidance, we have held that in certain instances, the 'all elements' rule forecloses resort to the doctrine of equivalents because, on the facts or theories presented in a case, a

limitation would be read completely out of the claim — <u>i.e.</u>, the limitation would be effectively removed or 'vitiated.'" <u>DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.</u>, 469 F.3d 1005, 1017 (Fed. Cir. 2006).  Nonetheless, this court has also warned that an overly broad application of the all elements rule may improperly "swallow the doctrine of equivalents entirely" and limit infringement to "a repeated analysis of literal infringement."  <u>Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.</u>, 149 F.3d 1309, 1317 (Fed. Cir. 1998).

Ironically, the Supreme Court adopted this vitiation limitation on the doctrine of equivalents at a point near the time that this court had learned of its internal inconsistency.  Claim vitiation limits the doctrine of equivalents. The doctrine of equivalents, by definition, acknowledges that a specific claim limitation is not expressly found in the accused product or process.  Claim vitiation proceeds from the same acknowledgment that a specific claim limitation is missing from the accused product or process.  The doctrine of equivalents permits a finding of infringement, despite the missing limitation, because the deficit is not substantial.  Claim vitiation bars infringement because the same deficit is substantial.  In other words, claim vitiation, by definition, simply rewinds and replays the doctrine of equivalents test for substantiality of a missing claim limitation.  Thus, a finding of insubstantial difference to show equivalency obviates any further vitiation analysis—the wholly insignificant equivalent, by definition, would not vitiate the claim.  On the other hand, a finding of substantial difference renders vitiation unnecessary.  Thus, the vitiation doctrine is really subsumed within the test for equivalents itself.  In other words, the all elements rule is simply a circular application of the doctrine of equivalents.

While the tests for equivalents and vitiation are coterminous, the Supreme Court's <u>Warner-Jenkinson</u> decision did create one difference: the identical equivalents and vitiation tests are made by different decision makers. "The determination of equivalency is a question of fact . . . ." <u>Upjohn Co. v. Mova Pharm. Corp.</u>, 225 F.3d 1306, 1309 (Fed. Cir. 2000). Conversely, this court has instructed—as required by <u>Warner-Jenkinson</u>—that application of the all elements rule is a question of law. <u>See Panduit Corp. v. HellermannTyton Corp.</u>, 451 F.3d 819, 826 (Fed. Cir. 2006) ("The determination of infringement under the doctrine of equivalents is limited by two primary legal doctrines, prosecution history estoppel and the 'all elements' rule, the applications of which are questions of law."). The problem with this conflict is apparent. Judges decide vitiation; juries decide equivalents. Although the tests are the same, the testers are different, which could produce different results in application of the same rules.

This case can serve to illustrate this situation. Trex argued to the district court that a finding of equivalents on a product comprised of forty to fifty percent wood would necessarily vitiate the claim language requiring the board to be "made [entirely] from wood." The district court agreed and barred Nystrom from pursuing an infringement theory based on equivalents. Would the result be different, however, if the accused device was comprised of fifty-five or sixty percent wood? Seventy percent? Should this question be resolved by a jury, by a judge, or by both?