# United States Court of Appeals for the Federal Circuit

---

**BRAIN LIFE, LLC,**
*Plaintiff-Appellant,*

v.

**ELEKTA INC.,**
*Defendant-Appellee.*

---

2013-1239

---

Appeal from the United States District Court for the Southern District of California in No. 12-CV-0303, Judge Cathy Ann Bencivengo.

---

Decided: March 24, 2014

---

PAUL ADAMS, The Adams Law Firm, of Albuquerque, New Mexico, argued for plaintiff-appellant. Of counsel on the brief were MICHAEL T. COOKE, JONATHAN T. SUDER, and BRETT M. PINKUS, Friedman, Suder & Cooke, of Fort Worth, Texas.

THERESA M. GILLIS, Mayer Brown LLP, of New York, New York, argued for defendant-appellee. With her on the brief were THOMAS W. JENKINS and ERICK J. PALMER, Mayer Brown LLP, of Chicago, Illinois.

---

Before O'MALLEY, BRYSON, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Brain Life, LLC ("Brain Life") filed suit against Elekta, Inc. ("Elekta") alleging infringement of the method claims of U.S. Patent No. 5,398,684 ("the '684 patent"). The district court granted summary judgment in favor of Elekta, holding that Brain Life's claim was barred on res judicata grounds. *See Brain Life LLC v. Elekta, Inc.*, No. 3:12–cv–303 (S.D. Cal. Jan. 31, 2013), ECF No. 43 ("*Brain Life II*"). Brain Life appeals from that determination. While we agree with Brain Life that neither claim nor issue preclusion bars its claims, we find that the *Kessler* Doctrine as announced in *Kessler v. Eldred*, 206 U.S. 285 (1907), precludes the majority of Brain Life's claims. Accordingly, we affirm-in-part and vacate-in-part the district court's judgment and remand for further proceedings.

## I. BACKGROUND

In December 1997, Medical Instrumentation Diagnostics Corporation ("MIDCO") sued Elekta alleging that Elekta's GammaKnife, GammaPlan, and SurgiPlan products infringed the '684 patent ("MIDCO Litigation"). *See Brain Life II*, ECF No. 43 at 2. The '684 patent is entitled "Method and Apparatus For Video Presentation From Scanner Imaging Sources." The '684 patent is directed to both a method and apparatus for generating a video image from a variety of separate scanner imaging sources such as a computerized axial tomography image, a nuclear magnetic resonance image, and an X-ray. *See* '684 patent at col. 6, l. 25 – col. 7, l. 25. According to the '684 patent, in the past, images acquired by various scanner imaging sources were not standardized in a common format, and there was no existing method for comparing and using the images obtained from various scanners. '684 patent at col. 4, ll. 31–34. The inventors of the '684 patent purported to solve this problem by teach-

ing how to use these various images and display them on a single device. *Id.* at col. 4, ll. 34–36. We provided a more detailed description of the claimed invention in *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1207–08 (Fed. Cir. 2003) ("*MIDCO*") and only recite the summary above to provide context.

The '684 patent has 109 claims, only two of which are independent: claims 1 and 53. *See* '684 patent at col. 19, l. 14 – col. 26, l. 30. Claim 1 discloses an apparatus, while claim 53 discloses a method. *See id.*

Claim 1 of the '684 patent discloses an apparatus comprising a collection of means intended to acquire, convert, store, recall, manipulate, compare, and use the separate scanner images collected:

> 1. An apparatus for generating a presentation of images from a variety of imaging sources, the apparatus comprising:
>
> means for acquiring a plurality of images from a plurality of separate imaging sources;
>
> means for converting said plurality of images into a selected format;
>
> means for storing said plurality of images;
>
> means for selectively recalling and displaying at least two images of said plurality of images upon a single display device;
>
> means for manipulating at least one of said at least two images independently of the other image;
>
> means for comparing said at least two images;
>
> means for determining stereotactic coordinates and performing volumetric determinations from said at least two images; and

means for determining distances and areas from said at least two images.

'684 patent at col. 19, ll. 14–32. Claim 53 discloses a method claiming a series of similar steps:

53. A method for generating a presentation of images from a variety of imaging sources, the method comprising the steps of:

acquiring a plurality of images from a plurality of separate imaging sources;

converting the plurality of images into a selected format;

storing the plurality of images;

selectively recalling and displaying at least two images of the plurality of images upon a single display device;

manipulating at least one of the at least two images independently of the other image;

comparing the at least two images;

determining stereotactic coordinates and performing volumetric determinations from the at least two images; and determining distances and areas from the at least two images.

'684 patent at col. 22, ll. 19–38.

As the MIDCO Litigation proceeded through discovery, MIDCO focused its efforts on claim 1 of the '684 patent and neglected the method claims. *See Brain Life II*, ECF No. 43 at 2. At the parties' request, the trial court only construed terms from apparatus claims 1, 3, 14, and 15 of the '684 patent. The district court construed the function of the "means for converting said plurality of images into a selected format" in claim 1 of the '684 patent to be "converting multiple acquired images into a

particular selected digital format." *MIDCO*, 344 F.3d at 1209. The trial court also found "that the structures corresponding to this function were the VME bus based framegrabber video display board, the computer video processor ('CVP'), and '[s]oftware routines for converting digital-to-digital known to those of skill in the art.'" *Id.* In other words, the district court's construction both included analog-to-digital and software based digital-to-digital conversion. *Id.*

Elekta requested that the district court dismiss the method claims prior to trial. *See id.* MIDCO did not oppose Elekta's motion, and the district court dismissed the method claims without prejudice. *See id.* The case proceeded to trial, and the jury found that Elekta's products infringed claim 1 of the '684 patent. *See id.* The jury also awarded $16 million in damages. *See id.*

On appeal, "[t]he key dispute between the parties [was] whether the district court was correct in including software for digital-to-digital conversion as a corresponding structure for the converting means." *Id.* We found that the inclusion of such software as a corresponding structure was incorrect. *See id.* at 1211. In particular, we found that the disclosure of the patent did not encompass software for digital-to-digital conversion because it was not clearly linked to the claimed function of converting images into a selected format. *See id.* at 1212. As such, we held that claim 1 of the '684 patent did not provide for digital-to-digital conversion, reversed the infringement finding, vacated the damages award, and remanded to the district court to enter judgment of noninfringement as a matter of law in favor of Elekta. *Id.* at 1211–22.

On remand, MIDCO attempted to revive the '684 patent method claims that had been dismissed prior to trial, presumably believing those claims were broader than the system claims, as limited by our construction on appeal. *See Brain Life II*, ECF No. 43 at 2. The district court

refused to reopen the case and entered final judgment in favor of Elekta. *Id.* MIDCO appealed that final judgment and we summarily affirmed the trial court's refusal to reopen the case in a per curiam decision. *See MIDCO v. Elekta*, 128 F. App'x 774 (Fed. Cir. 2005). As such, the judgment that Elekta did not infringe the apparatus claims of the '684 patent was final.

In September 2009, MIDCO licensed the '684 patent to a company, which, in turn, licensed the patent to Brain Life.[1] *See Brain Life II*, ECF No. 43 at 3. Brain Life then filed suit against several defendants, including Elekta, in July 2010. Brain Life alleged that Elekta's GammaKnife, GammaPlan, SurgiPlan, and ERGO++ treatment systems infringed the method claims of the '684 patent. *See Brain Life LLC v. Elekta, Inc.*, No. 3:10–cv–1539, (S.D. Cal. July 23, 2010), ECF No. 1 at 8–10 ("*Brain Life I*"). Elekta moved to dismiss Brain Life's complaint for failure to state a claim on res judicata grounds. *See id.* at ECF No. 32. The trial court and parties narrowed the issue to whether the same "claim" was involved in the MIDCO and Brain Life Litigations. *See Brain Life II*, ECF No. 43 at 3–5. The district court held that the primary dispute was whether the newly accused Elekta products were essentially the same as the products in the first suit and, consequently, barred from further litigation. *See id.*

The trial court denied Elekta's motion to dismiss because it found that the complaint sufficiently pleaded that the accused products were materially different. *See id.* The court, however, ordered the parties to conduct discovery on the question of whether the products in both suits

---

[1] There was no challenge to Brain Life's right to bring this action. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 n. 7 (Fed. Cir. 2007) (noting that an exclusive licensee who holds all substantial rights may sue in its own name).

were essentially the same. *See id.* The court also severed Elekta from the remaining defendants to allow the claims against the other defendants to proceed on the merits while the court resolved the res judicata issue. *See id.* After some discovery, Brain Life moved to dismiss Elekta's res judicata and collateral estoppel defenses, and Elekta moved for summary judgment on its res judicata defense. *See id.*

The district court granted summary judgment in favor of Elekta, finding that Brain Life's claims were barred. *See id.* at 5–8. The court first found it undisputed that there was no material difference between the currently accused products and the previously adjudicated non-infringing products regarding the limitations of the apparatus claims. *Id.* On this point, Brain Life conceded that the differences between the products were not material to infringement of the apparatus claims of the '684 patent. Because it found that Elekta's GammaKnife, GammaPlan, SurgiPlan, and ERGO++ products employed software for digital-to-digital conversions, the district court concluded that those products could not infringe the claims of the '684 patent, any more than the products in the MIDCO suit did. *See id.* Brain Life argued, however, that the similarity of the products in the Brain Life Litigation to the products in the MIDCO Litigation did not bar its allegations of infringement of the '684 patent's method claims. *See id.* It also argued that, because the ERGO++ product was entirely new to Elekta—having been purchased from a third party after the MIDCO judgment and appeal—the question of whether it infringed any of the claims of the '684 patent had never been addressed.

The trial court concluded that allowing Brain Life to assert the '684 patent's method claims against Elekta would amount to impermissible claim splitting. *See id.* The court noted that MIDCO accused Elekta's products of infringing the method claims in the original action, but

chose to forgo those allegations. *See id.* In other words, the trial court found that MIDCO had the opportunity to adjudicate the method claims in the first suit. *See id.* MIDCO voluntarily proceeded to trial on only claim 1 of the '684 patent, even though it could have proceeded to trial on claim 53 and the claims dependent therefrom as well. *See id.* The trial court found that, once final judgment was entered in favor of Elekta, Elekta proceeded to develop and sell its products with an understanding that its products did not infringe the '684 patent. *See id.* The trial court held that, because MIDCO could have pursued the method claims in the first litigation, but chose not to, Brain Life's attempt to revive those claims in the second litigation was barred. *See id.* The trial court did not differentiate the ERGO++ product from the other Elekta products at issue. Brain Life then appealed that determination.

Meanwhile, the action against the other defendants in *Brain Life I* proceeded. In February 2013, the trial court issued its claim construction order construing the terms contained in the method claims of the '684 patent. *See Brain Life I*, ECF No. 126. The court rejected defendants' proposed construction that would have limited the scope of the method claims to only analog-to-digital conversions akin to our construction of the apparatus claims in the MIDCO Litigation. *See id.* at 5–6. Instead, the trial court concluded that the method claims were broader than the apparatus claims construed in the MIDCO Litigation, and construed "converting the plurality of images into a selected format" to mean "changing the image format of two or more images, whether analog or digital, into a common chosen digital format." *Id.* In other words, the court construed the method claims to include digital-to-digital conversion—unlike the apparatus claims in the MIDCO Litigation.

## II. STANDARD OF REVIEW

Whether a cause of action is barred by claim preclusion is a question of law which we review without deference. *See Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001). Generally, in determining whether claim preclusion bars a later lawsuit, we apply the law of the regional circuit in which the trial court resides. *See Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008). The Ninth Circuit has held that claim preclusion applies where the prior suit: (1) involved the same claim or cause of action as the later suit; (2) reached a final judgment on the merits; and (3) involved the same parties or privies. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)). Whether two claims of infringement constitute the same claim or cause of action is an issue particular to patent law and we apply our own law without reference to the regional circuit law on that issue. *See Hallco*, 256 F.3d at 1294.

We review a grant or denial of summary judgment under the law of the regional circuit. *See SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1194–95 (Fed. Cir. 2013). The Ninth Circuit reviews the grant or denial of summary judgment de novo. *See Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir. 2009). We must view the evidence in the light most favorable to the nonmovant and determine whether there are any genuine issues of material fact. *See id.*

## III. DISCUSSION

Brain Life makes three primary arguments in urging reversal of the district court's holding that its claims against Elekta are barred. First, Brain Life contends that, because the asserted claim limitations in this suit differ from the asserted claims in the MIDCO suit, claim preclusion is inapplicable. Next, Brain Life contends that, because the trial court in the MIDCO Litigation dismissed

the method claims without prejudice, Supreme Court precedent counsels that those claims are not subject to res judicata. Brain Life contends that, when a claim is dismissed without prejudice, a party can sue again on the same claim, against the same defendant, in the same court. Finally, Brain Life argues that Elekta's ERGO++ product did not exist until after the first suit reached final judgment. Because that product did not exist, Brain Life contends that it could not have been accused in the MIDCO Litigation and that neither claim nor issue preclusion could apply to that product.

## A. CLAIM PRECLUSION

"In the simplest construct, [claim preclusion bars] the relitigation of a claim, or cause of action, or any possible defense to the cause of action which is ended by a judgment of the court." *Nystrom v. Trex Co.*, 580 F.3d 1281, 1284–85 (Fed. Cir. 2009) (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991)). Claim preclusion applies "whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon the consent of the parties." *Id.* at 1285. And, claim preclusion bars both claims that were brought as well as those that *could have been* brought. *See, e.g., Mars Inc. v. Nippon Conlux Kabushiki–Kaisha*, 58 F.3d 616, 619–20 (Fed. Cir. 1995) ("It is well established that a party may not split a cause of action into separate grounds in successive lawsuits; instead a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together.") (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

For claim preclusion to apply in a patent case, the alleged infringer must demonstrate that the accused product or process is "essentially the same" as the accused product or process in the first litigation. *Nystrom*, 580 F.3d at 1285 (quoting *Foster*, 947 F.2d at 480). As we

have previously stated, "[a]n essential fact of a patent infringement claim is the structure of the device or devices in issue." *Foster*, 947 F.2d at 479. An "'infringement claim,' for purposes of claim preclusion [does not] embrace[ ] more than the specific devices before the court in the first suit. Adjudication of liability for infringement is a determination that a thing is made, used or sold without authority under the claim(s) of a valid enforceable patent." *Young Eng'rs Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983).

Without a doubt, these principles bar the assertion of infringement of either the method or system claims to the extent the alleged acts of infringement predate the final judgment in the MIDCO Litigation. Brain Life does not seem to dispute this fact as to the system claims, since it asserts no cause of action relating to them. It does argue, however, that the final judgment in the MIDCO action would not act to bar the assertion of any claims of infringement of the method claims in the '684 patent. It premises this argument on its belief that the dismissal without prejudice of those claims gave it carte blanche to reassert those claims. We disagree. While the dismissal without prejudice allowed for the possibility that acts of infringement of the method claims could be subject to a future cause of action, that possibility was cut-off for all such acts predating the final MIDCO judgment once that judgment was entered. The trial court's refusal to reopen its judgment, moreover, does not affect the application of claim preclusion. *See Guild Wineries & Distilleries v. Whitehall Co.*, 853 F.2d 755, 761 (9th Cir. 1988) ("The date of judgment . . . controls the application of res judicata principles.").

Having concluded that claim preclusion did bar all allegations of infringement relating to activity that predated the final MIDCO judgment, we turn to whether claim preclusion would also bar claims relating to acts of in-

fringement that postdate that judgment. We find that it does not.

Brain Life argues that claim preclusion cannot apply to those claims. Brain Life argues that the trial court erred by focusing on whether there was a difference between the products in the two suits. According to Brain Life, the same transactional facts analysis involved in connection with application of claim preclusion requires an inquiry into whether the same patent claim, same limitation, and same claim construction of that limitation are applicable in both suits. In particular, Brain Life argues that, because the method claims may be (and have been) construed to include digital-to-digital conversions—directly contrary to the construction of the apparatus claims—the transactional facts in the two suits are not the same, and claim preclusion cannot bar the second suit.

We agree with Brain Life that claim preclusion does not wholly bar its second suit against Elekta, but not for the reasons Brain Life contends. Instead, we find that Brain Life's second suit is not barred by claim preclusion—regardless of whether the same transactional facts are present in both suits—to the extent Brain Life's current infringement allegations are temporally limited to acts occurring after final judgment was entered in the first suit.

Claim preclusion does not bar Brain Life from asserting either the apparatus or method claims against Elekta because "the claim that gives rise to preclusion . . . encompass[es] only the particular infringing acts . . . that are accused in the first action or could have been made subject to that action." *Aspex Eyewear Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1343 (Fed. Cir. 2012). As explained in *Aspex*, it is well-settled that

> a party who sues a tortfeasor is ordinarily not barred by a prior judgment from seeking relief for

> discrete tortious action by the same tortfeasor that occurs subsequent to the original action. That rule is based on the principle that res judicata requires a party to assert all claims that the party could have asserted in the earlier lawsuit; it follows that if the party could not have asserted particular claims—because the tortious conduct in question had not occurred at that time—those claims could not have been asserted and therefore are not barred by res judicata.

*Id.* at 1333–34 (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955); *Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992); *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981); *Kilgoar v. Colbert Cnty. Bd. of Educ.*, 578 F.2d 1033 (5th Cir. 1978)). And, those well-settled principles have been applied to patent cases involving sequential acts of infringement. *See id.* at 1343 (citing *Young Eng'rs*, 721 F.2d at 1306; *Cordis Corp. v. Boston Scientific Corp.*, 635 F. Supp. 2d 361, 369–70 (D. Del. 2009); *Williams v. Gillette Co.*, 887 F. Supp. 181, 183–85 (N.D. Ill. 1995); *MGA, Inc. v. Centri-Spray Corp.*, 699 F. Supp. 610, 614 (E.D. Mich. 1987)). Much like the *Aspex* case, to the extent Brain Life's allegations of infringement are directed to products created and, most importantly, acts of alleged infringement occurring after entry of the final judgment in the MIDCO Litigation, those claims are not barred by the doctrine of claim preclusion. Quite simply, Brain Life could not have asserted infringement claims against the products in question for acts of alleged infringement that postdate the final judgment in the MIDCO Litigation in the current litigation.

This conclusion does not end our inquiry, however, because other preclusion doctrines must still be addressed.

## B. ISSUE PRECLUSION

Issue preclusion bars subsequent litigation on an issue of law or fact that was actually litigated. *See Foster*, 947 F.3d at 480 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27). If an issue of fact or law is actually litigated and determined by a final judgment, and the determination is essential to the judgment, that determination is conclusive in any later action between the parties on the same or a different claim. *See id.* Importantly, where the parties consent to a judgment on an issue prior to trial, it cannot be said that the issue was actually litigated to finality. *See id.* (citing RESTATEMENT § 27 cmt. (e)).

MIDCO, Brain Life's predecessor, unsuccessfully asserted the apparatus claims against Elekta in the MIDCO Litigation. Brain Life has not asserted the apparatus claims against Elekta in the current suit. To the extent it had, the trial court's findings that Elekta's own products—the GammaKnife, GammaPlan, and SurgiPlan products—were not materially different from the products at issue in the MIDCO Litigation would bar it from asserting those claims. *Foster*, 947 F.2d at 480 ("A rationale for the rule of issue preclusion is that once a legal or factual issue has been settled by the court after a trial in which it was fully and fairly litigated that *issue* should enjoy repose."). The method claims, however, are a separate matter, particularly to the extent they relate to the ERGO++ product.

While MIDCO asserted the method claims against Elekta in the MIDCO Litigation, it is evident that those claims were not fully, fairly, and actually litigated to finality. Neither party requested that any terms of the method claims from the '684 patent be construed, nor did either party move for a determination of summary judgment regarding infringement, validity, or enforceability of the method claims. Indeed, the trial court only construed

terms from apparatus claims 1, 3, 14, and 15 of the '684 patent. *See Brain Life II*, ECF No. 43 at 2. The '684 patent method claims languished during the MIDCO Litigation until Elekta requested, via a motion in limine, that they be dismissed prior to trial for want of prosecution. *See id.* MIDCO did not oppose Elekta's motion, and the district court dismissed the method claims without prejudice. *See id.*

After a panel of this court reversed and remanded the judgment in favor of MIDCO, MIDCO attempted to revive the method claims. *See id.* The district court refused to reopen the case and entered final judgment in favor of Elekta. *See id.* MIDCO appealed that final judgment to us, and we summarily affirmed the trial court's refusal to reopen the case in a per curiam decision. *See MIDCO*, 128 F. App'x 774. Accordingly, because the '684 patent method claims were not fully, fairly, and actually litigated to finality between these parties, issue preclusion does not stand as a bar to a second suit on those claims.

Similarly, the ERGO++ product was never at issue in the MIDCO Litigation. While similarities between it and the products actually litigated may mean that certain questions regarding infringement of the system claims effectively may be foregone conclusions, they are not barred by our case law applying issue preclusion to previously challenged products which have not been materially altered. And, issue preclusion is no bar to assertion of the method claims based on use or sales of the ERGO++ product.

Again, the inquiry continues, however.

## C. KESSLER DOCTRINE

There exists a separate and distinct doctrine, known as the *Kessler* Doctrine, that precludes some claims that are not otherwise barred by claim or issue preclusion. Elekta identifies the doctrine, but does so under the

general rubric of claim preclusion. As explained above, however, traditional notions of claim preclusion do not apply when a patentee accuses new acts of infringement, i.e., post-final judgment, in a second suit—even where the products are the same in both suits. Such claims are barred under general preclusion principles only to the extent they can be barred by issue preclusion, with its attendant limitations. The *Kessler* Doctrine fills the gap between these preclusion doctrines, however, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result. While our past reliance on the *Kessler* Doctrine has been sparse, we have applied it before.

In *Kessler v. Eldred*, 206 U.S. 285 (1907), Eldred filed suit against his competitor Kessler alleging infringement of U.S. Patent No. 492,913 ("the '913 patent") directed to an electric lighter. Eldred first filed suit against Kessler in the District of Indiana, but the court found that Kessler's product did not infringe, a ruling that the Seventh Circuit affirmed. *See id.* at 285–86. Eldred subsequently filed suit in the Western District of New York against Breitwieser for infringement of the '913 patent. Breitwieser was a customer of Kessler and was selling the same electric lighters at issue in the Indiana action. *See id.* Kessler stepped in to indemnify its customer, but also filed a separate suit in Illinois to enjoin Eldred from filing suit in any court alleging infringement of the '913 patent in connection with those of Kessler's lighters that had already been found to be non-infringing in the Indiana action. *See id.* at 286–87. Both the district court and Seventh Circuit agreed with Kessler's position and granted the injunction in the Illinois action. *See id.* at 287.

The Supreme Court agreed with Kessler and stated that the final judgment in the first action between Eldred and Kessler "settled finally and everywhere . . . that Kessler has the right to manufacture, use, and sell the

electric cigar lighter" in question. *Id.* at 288. Flowing from that final decision in the first suit, the Court held that Kessler is entitled to sell its electric lighters unmolested by Eldred because those rights were established by the final judgment in the Indiana action. *See id.* at 289. In sum, the Court granted Kessler a limited trade right to continue producing, using, and selling the electric lighters that were the subject of the first suit and to do so without fear of allegations of infringement by Eldred—even when the acts of infringement occurred post-final judgment and even when it was third-parties who allegedly engaged in those acts of infringement. The Supreme Court concluded that Kessler was entitled to continue the same activity in which it engaged prior to the infringement allegations once it had defeated those contentions in the first suit. The Court did not rely on traditional notions of claim or issue preclusion in crafting this protection for Kessler.

We recognized the *Kessler* Doctrine in *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987). In that case, MGA, Inc. ("MGA") owned U.S. Patent No. 3,570,656 ("the '656 patent"). *See id.* at 761. In 1979, MGA and LaSalle Tool ("LaSalle") executed a license agreement under the '656 patent for LaSalle's accumulator conveyer machines which LaSalle sold to General Motors Corporation ("GM"). *See id.* LaSalle then developed and manufactured a newly designed machine that it claimed was outside the scope of the claims of the '656 patent. *See id.*

MGA sued LaSalle in Michigan state court for non-payment of royalties under the license agreement stemming from the sales of the new machines. *See id.* Following a bench trial, the state court found that the new machines were not covered by the license agreement. In affirming that decision, the Michigan Court of Appeals noted that the trial judge implicitly found that the new machines were not covered by the relevant claims of the '656 patent. *See id.* Meanwhile, MGA filed suit in the

United States District Court for the Eastern District of Michigan against GM for infringement of the '656 patent based on GM's use of LaSalle's new machines. *See id.* LaSalle intervened on GM's behalf and asserted that the suit against GM was barred by claim and issue preclusion, as well as the *Kessler* doctrine, by virtue of the Michigan state court ruling. *See id.* The district court granted summary judgment in favor of LaSalle (and GM), holding that relitigation of infringement was barred by the state court final judgment. *See id.*

On appeal, we held that the *Kessler* Doctrine applied to bar MGA's suit against GM. We noted that *Kessler* granted "a limited trade right which is 'the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference. It is a right which attaches to its product—to a particular thing—as an article of lawful commerce." *Id.* at 734 (alteration in original) (quoting *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.,* 232 U.S. 413, 418–19 (1914)). And, because the new machines were "admittedly the same in both suits it [was] LaSalle['s] right that the accused machines be freely traded without interference by MGA." *Id.* at 734–35. The *Kessler* Doctrine, therefore, gave LaSalle (an accused infringer) rights with respect to specific products that had been held to be noninfringing, even when the specific *acts* of infringement would not be barred by claim preclusion because they occurred post-final judgment.

The principle that, when an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the "status" of a noninfringing device vis-à-vis the asserted patent claims is "[a]n essential fact of a patent infringement claim." *See Foster*, 947 F.2d at 479. "[T]he status of an infringer is derived from the status imposed on the *thing* that is embraced by the asserted patent claims." *Id.* And, when the devices in the first and second suits are "essentially the same," the

"new" product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies. *See id.* at 479–80.

As we recognized in *MGA*, *Kessler* "was handed down by the United States Supreme Court in the heyday of the federal mutuality of estoppel rule." *See MGA*, 827 F.2d at 733 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 320–27 (1971)). At the time *Kessler* was decided, "the judge-made doctrine of mutuality of estoppel, ordain[ed] that, unless both parties (or their privies) in a second action [were] bound by a judgment in a previous case, neither party (nor his privy) in the second action may use the prior judgment as determinative of an issue in the second action." *Blonder-Tongue*, 402 U.S. at 320–21. The Supreme Court, therefore, may have created the *Kessler* Doctrine as an exception to the strict mutuality requirement that existed at that time, rather than to espouse a specific doctrine of substantive patent law.

Since that time, state and federal courts have created exceptions to the mutuality requirement, primarily when estoppel is pleaded defensively. *See id.* at 324–26. And, the continuing force of the *Kessler* Doctrine in the face of the development of defensively applied issue preclusion may be questionable on the precise set of facts presented in the case at bar. But, the *Kessler* Doctrine exists, and we are bound by it, even if its viability under current estoppel law may be of less value now than it was at the time it was handed down. Whether the *Kessler* Doctrine is an exception to the mutuality of estoppel rule or a matter of substantive patent law is a question we cannot answer. We may only apply the law as it continues to exist.

The *Kessler* Doctrine, therefore, is directly applicable to the case at bar. Brain Life's predecessor-in-interest asserted all of the '684 patent claims against Elekta in the MIDCO Litigation. *See Brain Life II*, ECF No. 43 at 2.

While MIDCO ultimately abandoned the method claims prior to trial, it could have continued to assert those claims. Thus, once the accused devices in the MIDCO Litigation were adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to all claims, Elekta was free to continue engaging in the accused commercial activity as a non-infringer. *See MIDCO*, 344 F.3d at 1209; *MIDCO*, 128 F. App'x. at 774. Elekta, thereafter, continued manufacturing and selling products accused in the MIDCO Litigation post-final judgment. Consequently, some of the accused devices in this suit have acquired a noninfringing status vis-à-vis the '684 patent by virtue of the first case, and Elekta is entitled to continue manufacturing, using, and selling those products without molestation from MIDCO or Brain Life. Simply, by virtue of gaining a final judgment of noninfringement in the first suit—where all of the claims were or could have been asserted against Elekta—the accused devices acquired a status as noninfringing devices, and Brain Life is barred from asserting that they infringe the same patent claims a second time.[2]

The district court found that Brain Life's current allegations of infringement are directed to "subsequent versions" of the previously litigated Elekta GammaKnife, GammaPlan, and SurgiPlan products. *Brain Life II*, ECF No. 43 at 5. The court also stated that it was undisputed that there are "no material differences between the currently accused products and the previously adjudicated

---

[2]    Notably, though it asserts only method claims in the current litigation, it is the making, using, or selling of the Elekta products that Brain Life asserts infringe or induces infringement of those method claims. In other words, if the products are materially the same, it would be the same allegedly infringing commercial activity that is at issue in both proceedings.

non-infringing products as to the limitations of claim 1." *Id.* During the summary judgment proceedings, moreover, Brain Life conceded that the products in the two suits were materially the same. *See* J.A. at 1271. And, Brain Life does not contend otherwise on appeal. As such, because Elekta's GammaPlan, GammaKnife, and Surgi-Plan are essentially the same accused products, Brain Life's claims are barred under the *Kessler* Doctrine.

As noted, Brain Life does not dispute that the new iterations of Elekta's GammaPlan, GammaKnife, and SurgiPlan are essentially the same as the previously litigated versions. Brain Life instead focuses its efforts on demonstrating that the patent claims in the two suits are not essentially the same. That is beside the point under the *Kessler* Doctrine because Elekta's GammaKnife, GammaPlan, and SurgiPlan products have acquired the status of noninfringing products as to the '684 *patent*, i.e., all claims that were brought or could have been brought in the first suit. Brain Life's allegations of infringement as to Elekta's GammaKnife, GammaPlan, and SurgiPlan, therefore, are barred.

Elekta's ERGO++ treatment planning system, however, is a different matter. Brain Life, and its predecessor MIDCO, have never accused Elekta's ERGO++ product of infringing any of the '684 patent claims. Indeed, Elekta only acquired the ERGO++ product after the MIDCO Litigation was finalized. Accordingly, the ERGO++ has never acquired the status of a noninfringing device in connection with the '684 patent. Unlike Elekta's other products, neither claim preclusion, issue preclusion, nor the *Kessler* Doctrine stand as a bar to Brain Life's current allegations of infringement regarding the ERGO++. The district court's judgment regarding Elekta's ERGO++ product, therefore, must be reversed and remanded for further proceedings.

IV. CONCLUSION

Based on the foregoing, Brain Life's assertions of post-judgment infringement of the '684 method claims are not barred by claim or issue preclusion. The *Kessler* Doctrine precludes Brain Life from asserting any claims of the '684 patent against Elekta's GammaKnife, GammaPlan, and SurgiPlan products, however, because they are essentially the same as the iterations litigated in the first suit. Brain Life's allegations of infringement against Elekta's ERGO++ product, however, are not barred and may continue on remand. The district court's judgment is vacated to the extent it relates to the ERGO++, and this case is remanded to the district court for further proceedings consistent with this opinion. Otherwise, the district court's judgment is affirmed.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**